## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE HARRINGTON & KING PERFORATING CO., INC., *et al.*,[1] | Case No. 16-15650 (Jointly Administered) |
| Debtors. | Hon. Deborah L. Thorne |

## NOTICE OF MOTION

TO: See attached Service List

**PLEASE TAKE NOTICE** that on **Thursday, October 19, 2017 at 9:30 a.m. Central Time**, or as soon thereafter as counsel may be heard, the undersigned will appear before United States Bankruptcy Judge Deborah L. Thorne, or any other judge sitting in her stead, in Courtroom 613 in the Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, and then and there present the attached *Motion for Entry of: (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially all of the Debtors' Assets, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts and Leases, (E) Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II) After Further Notice and a Hearing, an Order (A) Approving a Purchase and Sale Agreement, (B) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief*, a copy of which is hereby served upon you, at which time and place you may appear as you see fit.

Dated: October 12, 2017

Respectfully submitted,

**THE HARRINGTON & KING PERFORATING CO., INC. and HARRINGTON & KING SOUTH, INC.**

By:  */s/ Sara E. Lorber*
One of Its Attorneys

---

[1]   Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtors' federal tax identification numbers are: (a) The Harrington & King Perforating Co., Inc. (3190); and (b) Harrington & King South, Inc. (7859). The location of the Debtors' principal place of business and their address for notice purposes is 5655 West Fillmore Street, Chicago, Illinois 60644, Attn: Greg McCallister, Chief Restructuring Officer and Chief Operating Officer.

William J. Factor (6205675)
Sara E. Lorber (6229740)
**FACTORLAW**
105 West Madison Street, Suite 1500
Chicago, Illinois 60602
Telephone: 312-878-6146
Facsimile: 847-574-8233
Email:  wfactor@wfactorlaw.com
            slorber@wfactorlaw.com
*Counsel for the Debtors*

**<u>Certificate of Service</u>**

I, Sara E. Lorber, an attorney, certify that I caused a copy of the foregoing *Notice of Motion* and the related the *Motion for Entry of: (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially all of the Debtors' Assets, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts and Leases, (E) Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II) After Further Notice and a Hearing, an Order (A) Approving a Purchase and Sale Agreement, (B) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* to be served on the foregoing Service List via first class U.S. mail and the courts ECF notification system (as indicated) on the date hereof.

Date: October 12, 2017                          */s/ Sara E. Lorber*
                                                _____

# SERVICE LIST

**Registrants (Service via CM/ECF):**

- **Jason P Allain**   notice@billbusters.com, jallain@billbusters.com; billbusters@iamthewolf.com; borgeslawoffices@gmail.com; billbusters@ecf.inforuptcy.com

- **Michael A Brandess**   mbrandess@sfgh.com, bkdocket@sfgh.com

- **Whitman H. Brisky**   wbrisky@mauckbaker.com, WHBCourt@mauckbaker.com; raguilan@mauckbaker.com; mhills@mauckbaker.com

- **Deborah K Ebner**   dkebner@deborahebnerlaw.com, webmaster@debnertrustee.com; lizd@deborahebnerlaw.com

- **William J Factor**   wfactor@wfactorlaw.com, wfactorlaw@gmail.com; bharlow@wfactorlaw.com; wfactor@ecf.inforuptcy.com; wfactormyecfmail@gmail.com; r43923@notify.bestcase.com

- **Thomas R. Fawkes**   tomf@goldmclaw.com, seanw@restructuringshop.com; teresag@restructuringshop.com

- **James A Fields**   jfields@sampleslaw.com

- **Aaron L. Hammer**   ahammer@sfgh.com, chorvay@sfgh.com; mbrandess@sfgh.com; joconnor@sfgh.com; mmelickian@sfgh.com; bkdocket@sfgh.com; dmadden@sfgh.com; evandesteeg@sfgh.com

- **Bret Harper**   bharper@seyfarth.com, chidocket@seyfarth.com

- **David Paul Holtkamp**   dholtkamp@wfactorlaw.com

- **Brian J Jackiw**   brianj@goldmclaw.com, seanw@restructuringshop.com; erich@goldmclaw.com

- **Michael B Kind**   michael.kind@lockelord.com, karen.soto@lockelord.com; ChicagoDocket@lockelord.com

- **Ralph Landy**   landy.ralph@pbgc.gov, efile@pbgc.gov

- **Patrick S Layng**   USTPRegion11.ES.ECF@usdoj.gov

- **Zhijun Liu**   jliu@wfactorlaw.com, jliu@ecf.inforuptcy.com; bharlow@wfactorlaw.com; nbouchard@wfactorlaw.com

- **Sara E Lorber**   slorber@wfactorlaw.com, slorber@ecf.inforuptcy.com; nbouchard@wfactorlaw.com; bharlow@wfactorlaw.com

- **Phillip W. Nelson**   phillip.nelson@lockelord.com, karen.soto@lockelord.com; ChicagoDocket@lockelord.com

- **Wayne Owen**   owen.wayne@pbgc.gov, efile@pbgc.gov

- **James M Philbrick**   jmphilbrick@att.net

- **Paul H Scheuerlein**   pscheuerlein@gaido-fintzen.com, lynette@g-f.co;ecf@g-f.co
- **Elizabeth B Vandesteeg**   evandesteeg@sfgh.com, bkdocket@sfgh.com
- **Heidi E VonderHeide**   hvonderheide@ulmer.com, ahummel@ulmer.com
- **Stephen A Yokich**   efile@laboradvocates.com, syokich@laboradvocates.com

**Service via First Class Mail:**

| | |
|---|---|
| Patrick S. Layng<br>United States Trustee<br>219 S. Dearborn, St., Suite 873<br>Chicago, IL 60604 | Majestic Steel USA, Inc.<br>31099 Chagrin Blvd.<br>Cleveland, OH 44124 |
| U.S Dept. of Labor<br>f/b/o Harrington & King Cafeteria Plan<br>U.S. Dept. of Labor, Employee Benefits Security<br>Administration<br>230 S. Dearborn St., Suite 2160<br>Chicago, IL 60606 | Pension Benefit Guaranty Corporation<br>Attn: Office of the Chief Counsel<br>1200 K Street, NW<br>Washington, DC 20005 |
| Material Handling, Inc.<br>Clarklift<br>PO Box 1045<br>Dalton, GA 30722-1045 | Wells Fargo Financial Leasing<br>PO Box 10306<br>Des Moines, IA 50309 |
| Ally Financial<br>PO Box 9001951<br>Louisville, KY 40290 | Summit Products North<br>5000 Shady Oak Road<br>Hopkins, MN 55343 |
| Md7 Capital Three, LLC<br>10590 West Ocean Air Drive, Suite 303<br>San Diego, CA 92130 | Michael Collins & Associates<br>PO Box 2677<br>Estes Park, CO 80517-2677 |
| Ritter/Scheid Assoc.<br>PO Box 94<br>Berwyn, PA 193212 | |

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>THE HARRINGTON & KING<br>PERFORATING CO., INC., *et al.*,[1]<br><br>       Debtors. | Chapter 11 Reorganization<br><br>Case No. 16-15650<br>(Jointly Administered)<br><br>Hon. Deborah L. Thorne |

**MOTION FOR ENTRY OF: (I) AN ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND A SALE HEARING, (D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (F) GRANTING RELATED RELIEF; AND (II) AFTER FURTHER NOTICE AND A HEARING, AN ORDER (A) APPROVING A PURCHASE AND SALE AGREEMENT, (B) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (D) GRANTING RELATED RELIEF**

The Harrington & King Perforating Co., Inc. ("*H&K*") and Harrington & King South, Inc. ("*H&K South*"), as debtors and debtors in possession (collectively, the "*Debtors*"), by and through their undersigned counsel, hereby move this Court (this "*Motion*"), and respectfully state as follows:

**Relief Requested**

1.      By this Motion, the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "*Bidding Procedures Order*"):

---

[1]    Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtors' federal tax identification numbers are: (a) The Harrington & King Perforating Co., Inc. (3190); and (b) Harrington & King South, Inc. (7859). The location of the Debtors' principal place of business and their address for notice purposes is 5655 West Fillmore Street, Chicago, Illinois 60644, Attn: Greg McCallister, Chief Restructuring Officer and Chief Operating Officer.

(a)   authorizing and approving the bidding procedures attached to the Bidding Procedures Order as **Exhibit 1** (the "***Bidding Procedures***") in connection with the sale of substantially all of the Debtors' assets (the "***Assets***") in one or more sales;

(b)   approving the form and manner of notice attached to the Bidding Procedures Order as **Exhibit 2** (the "***Sale Notice***") of an auction (the "***Auction***") and sale hearing (the "***Sale Hearing***") with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (the "***Sale***");

(c)   scheduling the Auction and Sale Hearing;

(d)   approving procedures for the assumption and assignment (as set forth in the Bidding Procedures Order, the "***Assumption Procedures***") of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "***Contracts***") and

(e)   granting related relief.

2.      The Debtors have also filed and obtained approval of an application to retain Rally Capital Services LLC ("***Rally***") as their investment banker to sell the Assets.  Rally, with the assistance of the Debtors' other professionals will market the Assets prior to the Auction, in the manner set forth in the Bidding Procedures Order.   During this marketing process, the Debtors reserve the right, subject to consultation with their senior secured prepetition and postpetition lender, Inland Bank and Trust ("***Inland Bank***") and the Official Committee of Unsecured Creditors (the "***Committee***"), to enter into a Stalking Horse agreement (the "***Stalking Horse Agreement***") with a bidder if the Debtors, after consulting with Inland Bank and the Committee, believe that such an agreement will further the purposes of the Auction by, among other things, enticing value-maximizing bids.  Accordingly, the Debtors request authority, in the exercise of their reasonable business judgment, after consultation with Inland Bank and the Committee, to offer a Stalking Horse bidder (the "***Stalking Horse Bidder***") any or all of the following as part of a Stalking Horse Agreement:

(f)     a break-up fee (the "**Break-Up Fee**") in an amount to be determined by the Debtors, not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement;[2]

(g)     initial overbid protection in the amount of $100,000 (the "**Initial Overbid**" and, together with the Break-Up Fee, the "**Bid Protections**")).

2.     The Debtors also requests that, to the extent the Debtors enter into a Stalking Horse Agreement, any Break-Up Fee be granted administrative expense priority under sections 503(b) and 507(a)(2) of the Bankruptcy Code.

3.     Furthermore, the Debtors will seek entry of an order at the conclusion of the Sale Hearing, substantially in the form attached hereto as **Exhibit B** (the "**Sale Order**"):

(a)     authorizing and approving the Sale of the Assets to the Successful Bidder (as defined in the Bidding Procedures) on the terms substantially set forth in the Successful Bid;

(b)     authorizing and approving the Sale of all or substantially all of the Assets free and clear of liens, claims, encumbrances, and other interests in the Assets, all in accordance with the Successful Bid;

(c)     authorizing the assumption and assignment of the Contracts; and granting any related relief.

3.     The Debtors reserve the right to file and serve any supplemental pleading or declaration that the Debtors deem appropriate or necessary in its reasonable business judgment, including any pleading summarizing the competitive bidding and sale process and the results thereof, in support of its request for entry of the Sale Order before the Sale Hearing.  In further support of this Motion, the Debtors respectfully states as follows.

---

[2]     As contemplated in the proposed Bidding Procedures Order attached hereto as **Exhibit A**, the Debtors are seeking: (a) to have the Break-Up Fee allowed as an administrative expense in the amount of the Stalking Horse Bidder's reasonable and documented fees and expenses, including reasonable attorneys' fees, in connection with performing diligence and formulating, negotiating, and finalizing its bid; and (b) to have the Break-Up Fee paid from the sale proceeds, after notice and documentation of the Stalking Horse Bidder's reasonable fees and expenses has been provided to the Debtors, Inland Bank, the Committee, and the U.S. Trustee.

**Jurisdiction**

4.      The Court has jurisdiction over this Motion under 28 U.S.C. § 1334.  This Motion is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      Venue in this Court is proper under 28 U.S.C. § 1408.

6.      The bases for the relief requested in this motion are sections 363, 1123, and 1129 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), and Rules 2002, 6004, 6006, and 9014 of the Federal Rules of Bankruptcy Procedure (the "***Bankruptcy Rules***").

**Background**

7.      On May 7, 2016 (the "***Petition Date***"), H&K and its subsidiary H&K South filed their voluntary petitions for relief under chapter 11 of Bankruptcy Code.  The Debtors cases are being jointly administered.

8.      The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

9.      On May 23, 2016, the Office of the United States Trustee (the "***U.S. Trustee***") appointed the Committee.

10.      Since filing for bankruptcy, the Debtors have taken substantial steps towards an operational reorganization, including reducing overhead by, among other things, terminating redundant employees. They have also hired experienced personnel to oversee sales and to take over many of administrative functions that current management had been handling since the filing of the chapter 11 cases.

11.     Unfortunately, the Debtors' efforts to identify an equity sponsor for a plan of reorganization have not been successful, and the Debtors have determined that their best course is to pursue one or more sales (preferably on a going concern basis) to liquidate their assets.

12.     The Debtors, therefore, have retained Rally as the Debtors' investment banker to market the Assets and enter into one or more agreements for their sale pursuant to section 363 of the Bankruptcy Code, subject to consultation with Inland Bank and the Committee and the approval of this Court.

### The Debtors' Sale Process for Assets

13.     By this Motion, the Debtors seek to authorize Rally as the Debtors' selling agent (subject to the Court's approval of Rally's retention application) to market and sell the Assets in an expeditious process.

14.     Following the approval of the Bidding Procedures, Rally will engage in a robust sale process on behalf of the Debtors, contacting both financial and strategic investors regarding participation in the sale process.  All interested parties will be given an opportunity to execute a confidentiality agreement.   Those parties that execute a confidentiality agreement will be provided with substantial due diligence information concerning, and access to, the Debtors and the Assets, including, without limitation, financial, operational, and other detailed information.

15.     Furthermore, Rally and the Debtors will have 30 days to solicit Qualified Bids (as defined in the Bidding Procedures) and the Debtors will have 30 days to designate the party submitting the Qualified Bid it deems in its business judgment (after consultation with Inland Bank and the Committee) to be the highest and best bid to be the Stalking Horse Bidder and to receive the benefit of the Bid Protections including the Break-Up Fee.  If, at the end of the 30-day stalking-horse search period no Qualified Bids are received, or if the Debtors determine

(after consultation with Inland Bank and the Committee) not to designate any of the Qualified Bids and the Stalking Horse Bid, Inland Bank will serve as the Stalking Horse Bidder with a credit bid of the full amount of their debt, approximately $4.3 million, subject only to the protection of an Initial Overbid amount of $100,000, and no other Bid Protections.

16.     Subject to the Bankruptcy Court's own schedule, the Auction, if any, will be conducted approximately 60 days after the Bidding Procedures are approved by the Court, with the Sale Hearing to be conducted shortly thereafter, as described below.

## The Auction and Proposed Sale

17.     The Debtors believe that a prompt sale of the Assets represents the best option available for all stakeholders in this chapter 11 case.  Moreover, it is critical for the Debtors to execute on a sale transaction as soon as possible if the Debtors are to effectuate a going-concern sale, as Inland Bank's willingness to continue to bankroll the Debtors ongoing operations is quickly coming to an end.

18.     By this Motion, the Debtors request that the Court approve the following general timeline, with the assumption that the Court will enter an order granting this Motion on October 12, 2017.  These dates are subject to change in the event that the Court does not enter an order at that hearing:

(a)     ***Stalking Horse Bidder Designation Deadline***: As described above, the Debtors will designate a Stalking Horse Bidder on or before November 20, 2017 (the "***Stalking Horse Bidder Designation Deadline***").  Any potentially interested purchaser of the Assets that desires to be considered to be the Stalking Horse Bidder should submit its Qualified Bid on or before November 13, 2017 at 11:59 p.m. (Central Time) (the "***Stalking Horse Bid Submission Deadline***").  If no Qualified Bids are received by the Stalking Horse Bid Submission Deadline, or if the Debtors determine (after consultation with Inland Bank) not to designate any received Qualified Bids as a Stalking Horse Bid, Inland Bank will be designated as the Stalking Horse Bidder with a credit bid of the full amount of their debt, approximately $4.3 million.

(b) **Contract Cure Objection Deadline**: Objections to the potential assumption and assignment of any Contract will be filed and served no later than 4:00 p.m. (Central Time) on the day that is fourteen (14) calendar days after the service of the Cure and Possible Assumption and Assignment Notice (as defined below).

(c) **Bid Deadline**: As noted above, for a Bid to be considered for designation as the Stalking Horse Bidder, Qualified Bidders must submit their Qualified Bids no later than the Stalking Horse Bid Submission Deadline. To participate at the Auction, however, Bids for the Assets, including a marked-up form of the Stalking Horse Agreement, if one has been accepted by the Debtors as contemplated by the Bidding Procedures Order, as well as the deposit and the other requirements for a bid to be considered a Qualified Bid (as defined in the Bidding Procedures) must be received by no later than December 11, 2017 at 11:59 p.m. (Central Time) (the "**Bid Deadline**").

(d) **Auction**: The Auction, if necessary, will be held at the offices of Inland Bank's counsel, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606 on December 12, 2017 at 10:00 a.m. (Central Time), or such other location as identified by the Debtors after notice to all Qualified Bidders, Inland Bank, the Committee, and the U.S. Trustee.

(e) **Sale Objection Deadline**: Objections to the Sale will be filed and served no later than 4:00 p.m. (Central Time) on December 13, 2017.

(f) **Sale Hearing**: Consistent with the Court's availability and schedule, the Sale Hearing will commence on or before December 14, 2017 at 10:00 a.m. (Central Time).

19. The Debtors believe that this timeline maximizes the prospect of receiving a higher or otherwise better offer without unduly prejudicing these chapter 11 estates. To further ensure that the Debtors' proposed Auction and Sale process maximizes value for the benefit of the Debtors' estates, Rally will use the time following entry of the Bidding Procedures Order to actively market the Assets in an attempt to solicit the highest or otherwise best bids available. The Debtors believe the relief requested by this Motion is in the best interests of their creditors, their other stakeholders, and all other parties in interest, and should be approved.

## Bidding Procedures Order

### I.       The Bidding Procedures

20.       To efficiently solicit, receive, and evaluate bids in a fair and accessible manner, the Debtors have adopted and propose the Bidding Procedures attached hereto as **Exhibit 1** to the Bidding Procedures Order to govern the Sale process.   The Bidding Procedures were developed to permit an expedited sale process, to promote participation and active bidding, and to ensure that the Debtors receive the highest or otherwise best offer for the Assets.

21.       The Bidding Procedures describe, among other things, the requirements for prospective purchasers to participate in the bidding process, the availability and conduct of due diligence, the deadline for submitting a competing bid, the method and factors for determining qualifying bids, the criteria for selecting a successful bidder, and the ability of the Debtors to select a Stalking Horse Bidder and to award certain Bid Protections if the Debtors believe, in the exercise of their business judgment, that selecting a Stalking Horse Bidder and awarding Bid Protections will enhance the Debtors' efforts to maximize the value of the Assets.

22.       The salient points of the Bidding Procedures are as follows:

a.       ***The Property***:   A Bid should propose a Sale involving substantially all of the Debtors' Assets.   The Debtors shall evaluate all Bids to determine whether such Bid(s) maximizes the value of the Debtors' estates as a whole.   The transaction documents shall also identify any executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it (collectively, the "***Assigned Contracts***").   The Debtors will consider proposals for less than substantially all of the Debtors' Assets or operations.   A Bid to purchase only certain Assets of the Debtors shall include a purchase price determined by such Bidder, which shall be reviewed by the Debtors in consultation with Inland Bank and the Committee to evaluate the sufficiency of the purchase price.

b.       ***Bid Requirements***:   Any Bid (other than the Stalking Horse Bid, as defined herein) must be submitted in writing no later than the Bid Deadline and determined by the Debtors, in their reasonable business judgment, to have satisfied the following requirements:

(i)　　　**Purchase Price**: Each Bid must clearly set forth the purchase price to be paid in cash.  The proposed purchase price must exceed the Stalking Horse Bid, the $100,000.00 Overbid, plus the Break-Up Fee, if applicable.

(ii)　　　**Deposit**: Each Bid must be accompanied by a cash deposit in the amount equal to ten percent (10%) of the proposed purchase price to be held in a non-interest-bearing escrow account to be identified and established by the Debtors (the "**Deposit**").

(iii)　　　**Purchase and Sale Agreement**: Each Bid must expressly include an asset purchase agreement with a blackline clearly marked to show changes requested by the Bidder against the Stalking Horse Agreement.

(iv)　　　**Same or Better Terms**: Except as otherwise provided in the Bidding Procedures, each Bid must be, in the Debtors' reasonable business judgment, substantially on the same or better terms that the terms of the Stalking Horse Agreement.  Each Bid must include duly executed transaction documents necessary to effectuate the Sale (the "**Bid Documents**").

(v)　　　**Demonstrated Financial Capacity, Committed Financing**: A Bidder must have, in the Debtors' reasonable business judgment, the necessary financial capacity to consummate the proposed transactions required by the Bid.  Each Bid must also include committed financing, documented to the Debtors' reasonable satisfaction, that demonstrates the Bidder has sufficient liquid assets, or has received sufficient debt and/or equity funding commitments, to satisfy the Bidder's Purchase Price and other obligations under its Bid, including without limitation, the identity and the contact information of the specific person(s) or entity(s) responsible for such committed financing whom the Debtors should contact regarding such committed financing.  Such funding commitments shall not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their business judgment.

(vi)　　　**Identity**: Each Bidder must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such), and the complete terms of such participation.  Under no circumstances may any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) whom the Debtors should contact regarding such Bid.

(vii)　　　**Contingencies, No Financing or Diligence Outs**: A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal

approval, on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' reasonable business judgment, than those set forth in the Stalking Horse Agreement.

(viii)   ***Irrevocable***: A Bidder's Bid shall be irrevocable unless and until the Debtors accept a higher Qualified Bid (as defined herein) and such Bidder is not selected as the Backup Bid (as defined herein).

(ix)   ***Expenses***: Each Bidder presenting a Bid or Bids shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction.

(x)   ***Authorization***: Each Bid must contain evidence that the Bidder has obtained authorization or approval from its Board of Directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transaction contemplated in such Bid.

(xi)   ***As-Is, Where-Is***: Each Bid must include a written acknowledgment and representation that the Bidder: (A) has had an opportunity to conduct any and all due diligence regarding Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (C) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets for the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's proposed Purchase and Sale Agreement.

c.   ***Bid Deadline***: Each Bid must be transmitted via e-mail (in .pdf or similar format) so as to be actually received on or before **the Bid Deadline** by the Notice Parties.

d.   ***The Auction***:   If one or more Qualified Bids are submitted, the Debtors will conduct the Auction to determine the Successful Bidder with the highest and best Bid (the "***Successful Bid***").   If no Qualified Bids are submitted, the Debtors may adjourn or cancel the Auction.   If the Auction is canceled, the Stalking Horse Bidder shall be designated as the Successful Bidder and the Stalking Horse Agreement the Successful Bid.

e.   ***Terms of Overbid***:   During the course of the Auction, the Debtors shall, after the submission of each Overbid, promptly inform each Qualified Bidder which Overbid reflects in the Debtors' reasonable business judgment, the highest and otherwise best Bid.   All Overbids at the Auction shall be in minimum increments

of $100,000 in cash above the leading Bid identified at the commencement of the Auction.

f. **Backup Bidder:** Notwithstanding anything in the Bidding Procedures to the contrary, if the Auction is conducted, the Qualified Bidder(s) with the next-highest or otherwise second-best Qualified Bid at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, shall be required to serve as the backup bidder (the "**Backup Bidder**"). The Backup Bidder(s) shall be required to keep its or their Qualified Bid(s) — or if the Backup Bidder(s) submitted one or more Overbids at the Auction, its final Overbid(s) — open and irrevocable until the closing of the transaction with the Successful Bidder(s). The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder(s).

g. **Bid Protections:** If a Qualified Bid other than the Stalking Horse Bid is selected by the Debtors at the Auction as the Successful Bid, the Stalking Horse Bidder (other than Inland Bank) will be entitled to receive the Break-Up Fee from the proceeds of the Sale.

h. **Reservation of Rights:** The Debtors reserve the right to modify these Bidding Procedures in their reasonable business judgment in any manner that will best promote the goals of the bidding process or impose, at or prior to the Auction, additional terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadline set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing (as defined below) in open court without further notice; (c) reopening the Auction to consider further Bids or Overbids; (d) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction (*e.g.*, the amount of time to make subsequent overbids, whether a non-conforming Bid constitutes a Qualified Bid); (e) canceling the Auction; and (f) rejecting any or all Bids or Qualified Bids.

23.    Importantly, the Bidding Procedures recognize the Debtors' fiduciary obligations to maximize sale value and, as such, do not impair the Debtors' ability to consider all qualified bid proposals and preserve the Debtors' right to modify the Bidding Procedures as necessary or appropriate to maximize the value of Assets.

## II.    Form and Manner of Sale Notice

24.    On or within three business days of the entry of the Bidding Procedures Order, the Debtors will cause the Sale Notice to be served on: (a) the United States Trustee for the Northern District of Illinois (the "**U.S. Trustee**"); (b) counterparties to the Contracts (the "**Contract**

*Counterparties*"); (c) all parties who have previously expressed an interest the Assets; (d) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (e) the Internal Revenue Service; (f) all applicable state and local taxing authorities; (g) each governmental agency that is an interested party with respect to the Sale; (h) all known creditors of the Debtors; and (i) all parties who have filed appearances or requested notices through the Court's CM/ECF system in these chapter 11 cases.

26. 	The Debtors further submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice and the Assumption and Assignment Notice as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002. The Debtors propose that no other or further notice of the Sale shall be required. Accordingly, the Debtors respectfully request that this Court approve the form and manner of the Sale Notice.

### III.        Summary of the Assumption and Assignment Procedures

26. 	The Debtors are also seeking approval of certain procedures to facilitate the fair and orderly assumption and assignment of the Contracts in connection with the Sale (the "*Assumption and Assignment Procedures*"). Pursuant to the Bidding Procedures Order, notice of the proposed assumption and assignment of the Contracts to the Successful Bidder, the proposed cure amounts related thereto, and the right, procedures, and deadlines for objecting thereto, will be provided in separate notices, attached to the Bidding Procedures Order as **Exhibit 3** (the "*Assumption and Assignment Notice*") to be sent to the applicable Contract Counterparties. Because the Assumption and Assignment Procedures are set forth in detail in the

attached Bidding Procedures Order, they are not restated herein. Generally, however, the Assumption and Assignment Procedures: (a) fix the process by which the Debtors will serve notice on all Contract Counterparties regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of the right and the procedures to object thereto; and (b) establish objection and other relevant deadlines and the manner for resolving disputes relating to the assumption and assignment of the Contracts to the extent necessary. Significantly, the Assumption and Assignment Procedures provide Contract Counterparties with at least seven days' notice of the proposed assignment and such party's opportunity to object to the proposed assignment.

<u>**Basis for Relief**</u>

**I.      The Bidding Procedures Should Be Approved.**

27.      Courts have made clear that a debtor's business judgment is entitled to substantial deference with respect to the procedures to be used in selling an estate's assets. *See, e.g., Fulton State Bank v. Schipper (In re Schipper)*, 993 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the debtor-in-possession can sell property of the estate . . . if he has an 'articulated business justification'") (internal citation omitted); *In re Integrated Resources, Inc.*, 147 B.R. 650, 656-57 (S.D.N.Y. 1992) (noting that bidding procedures that have been negotiated by estate representative are to be reviewed according to the deferential "business judgment" standard, under which such procedures and arrangements are "presumptively valid"); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (same).

28.      The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate. *See, e.g., Corp. Assets, Inc. v. Paloian*, 368 F.3d 761, 765 (7th Cir. 2004) (in a bankruptcy sale, the "governing principle . . . is to secure the highest price

for the benefit of the estate and creditors"); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the estate at hand"); *Integrated Resources*, 147 B.R. at 659 ("[I]t is a well-established principle of bankruptcy law that the objective of the bankruptcy rules and the trustee's duty with respect to such sales is to obtain the highest price or greatest overall benefit possible for the estate.") (quoting *In re Atlanta Prods., Inc.*, 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)).

29.     To that end, courts uniformly recognize that procedures intended to enhance competitive bidding are consistent with the goal of maximizing the value received by the estate and therefore are appropriate in the context of bankruptcy transactions. *See, e.g., Integrated Resources*, 147 B.R. at 659 (bidding procedures "are important tools to encourage bidding and to maximize the value of the debtor's assets"); *In re Fin. News Network, Inc.*, 126 B.R. 152, 156 (Bankr. S.D.N.Y. 1991) ("court-imposed rules for the disposition of assets . . . [should] provide an adequate basis for comparison of offers, and [should] provide for a fair and efficient resolution of bankrupt estates"); *In re AQP Liquidating Inc. f/k/a QT, Inc.*, No. 07-03227 (Bankr. N.D. Ill. Nov. 28, 2007) (requiring minimum overbids to exceed purchaser's offer of $410,000 by at least $41,000 (10.0 percent of total purchase price)); *In re Comdisco, Inc.*, No. 01-24795 (Bankr. N.D. Ill. Aug. 9, 2001) (requiring minimum over bids to exceed purchaser's offer of $610 million by at least $43.3 million (approximately 7.0 percent of total purchase price)).

30.     The Debtors believe that the Bidding Procedures will establish the parameters under which the value of the Sale may be tested at the Auction. The Bidding Procedures will increase the likelihood that the Debtors will receive the greatest possible consideration because they will ensure a competitive and fair bidding process.

31.     The Debtors believe that the proposed Bidding Procedures will promote active bidding from seriously interested parties and will elicit the highest or otherwise best offers available for the Assets.  The proposed Bidding Procedures will enable the Debtors to conduct the Sale in a controlled, fair, and open fashion that will encourage participation by financially capable bidders who will offer the best package for the Assets and who can demonstrate the ability to close the transaction.

32.     Specifically, the Bidding Procedures contemplate an open auction process with minimum barriers to entry and provide potential bidding parties with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid. At the same time, the Bidding Procedures provide the Debtors with a robust opportunity to consider competing bids and select the highest or otherwise best offer for the completion of the Sale.  Additionally, if the Debtors select a Stalking Horse Bid, entering into the Stalking Horse Agreement with the Stalking Horse Bidder ensures that the Debtors obtain fair market value by setting a minimum purchase price for the Assets that will be tested in the marketplace.  As such, creditors of the Debtors' estates can be assured that the consideration obtained will be fair and reasonable and at or above the market.

33.     The Debtors submit that the proposed Bidding Procedures will encourage competitive bidding, are appropriate under the relevant standards governing auction proceedings and bidding incentives in bankruptcy proceedings, and are consistent with other procedures previously approved by this Court and other courts in this District.  *See, e.g., In re the Assets, LLC*, Case No. 15-17314 (Bankr. N.D. Ill. May 21, 2015); *In re OHCMC-Oswego, LLC*, Case No. 14-05349 (Bankr. N.D. Ill. June 17, 2014); *In re Qualteq, Inc.*, No. 12-05961 (Bankr. N.D. Ill. Oct. 4, 2012); *In re Giordano's Enters., Inc.*, No. 11-06098 (Bankr. N.D. Ill. Oct. 25, 2011);

*In re Canopy Fin., Inc.*, No. 09-44943 (Bankr. N.D. Ill. Jan. 27, 2010); *In re Gas City, Ltd.*, No.

10-47879 (Bank. N.D. Ill. Jan. 13, 2010): *In re Kimball Hill, Inc.*, No. 08-10095 (Bankr. N.D. Ill.

Sept. 9, 2008); *In re Neumann Homes, Inc.*, 07-20412 (Bankr. N.D. Ill. Feb. 28, 2008).

**II.      The Overbid Increment Is Appropriate.**

34.      One important component of the Bidding Procedures is the "Overbid" provision.

Once the Debtors determines the Auction baseline bid and holds the Auction, all subsequent

Overbids must be made in increments of at least $100,000 more than the Auction baseline bid

(the "***Initial Minimum Overbid***") and then continue in minimum increments of at least

$100,000; *provided* that the Debtors will retain the right to modify the bid increment

requirements at the Auction.

35.      The Debtors believe that such Initial Minimum Overbid is reasonable under the

circumstances, and will enable the Debtors to maximize the value received for the Assets while

limiting any chilling effect in the marketing process.  The Overbid increment is also well within

the increment level previously approved by courts in this District.  *See In re Emerald Oil, Inc.*,

No. 16-10704 (KG) (Bankr. D. Del. July 28, 2016) (approving $500,000 bid increment); *In re*

*Dura Auto. Sys., Inc.*, Case No. 06-11202 (KJC) (Bankr. D. Del. July 24, 2007) (approving

$750,000 increment); *In re New Century TRS Holdings, Inc.*, Case No. 07-10416 (KJC) (Bankr

D. Del. Apr. 20, 2007) (approving $500,000 increment); *In re Three A's Holdings, L.L.C.*, Case

No. 06-10886 (BLS) (Bankr D. Del. Sept. 7, 2006) (approving $500,000 increment).

**III.      The Ability to Enter into a Stalking Horse Agreement with Bid Protections
Has a Sound Business Purpose and Should Be Approved.**

36.      Pursuant to the Motion, the Debtors are seeking the pre-approval of this Court to

allow the Debtors to choose, subject to consultation with Inland Bank and the Committee, a

Stalking Horse Bidder at any time prior to the Stalking Horse Bidder Designation Deadline, and

to offer that bidder the Bid Protections without the need to return to court for further approval.

The Debtors believe that, in this case, such relief is warranted to ensure the Debtors' ability to

take advantage of a potentially value-maximizing bid.  The ability of the Debtors to offer a

Stalking Horse Bidder the Bid Protections is beneficial to the Debtors' estate and creditors in

that, by providing these incentives, the Debtors will have an opportunity to induce a Potential

Bidder to submit or increase its bid prior to the Auction.  To the extent bids can be improved

prior to the Auction, a higher floor is established by the Stalking Horse Bid.  Thus, even if a

Stalking Horse Bidder is offered the Bid Protections and ultimately is not the Successful Bidder,

the Debtors and their estates will have benefited from the higher floor established by the

improved bids.  The Debtors will exercise prudent business judgment before offering or agreeing

to any of the Bid Protections, and will only do so if such protections, in the reasonable business

judgment of the Debtors, will likely result in the result in the realization of greater value for the

Debtors and their estates.

  37. Indeed, break-up fees and other forms of Bid Protections are a normal and, in

many cases, necessary component of significant sales conducted pursuant to section 363 of the

Bankruptcy Code: "Break-up fees are important tools to encourage bidding and to maximize the

value of the debtor's assets . . . . In fact, because the . . . corporation has a duty to encourage

bidding, break-up fees can be **necessary** to discharge [such] duties to maximize value."

*Integrated Resources*, 147 B.R. at 659-60 (emphasis added).  Specifically, bid protections "may

be legitimately necessary to convince a 'white knight' bidder to enter the bidding by providing

some form of compensation for the risks it is undertaking."  *995 Fifth Ave.*, 96 B.R. at 28

(quotation omitted); *see also Integrated Resources*, 147 B.R. at 660-61 (bid protections can

prompt bidders to commence negotiations and "ensure that a bidder does not retract its bid"); *In*

*re Hupp Int'l Indus., Inc.*, 140 B.R. 191, 194 (Bankr. N.D. Ohio 1992) ("[W]ithout such fees, bidders would be reluctant to make an initial bid for fear that their first bid will be shopped around for a higher bid from another bidder who would capitalize on the initial bidder's . . . due diligence.").

38.     A break-up fee provides value to the estate by serving as an "incentive payment" to the Stalking Horse Bidder who has placed the Debtors' property in "sales configuration mode," attracts other bidders to the auction for the property, but is not the successful bidder at the auction.  Both are intended to compensate the stalking-horse for its opportunity costs, as well as out-of-pocket expenses, incurred in connection with pursuing the Debtors' Assets.  Here, the Break-Up Fee will represent no more than 3% of the proposed purchase price under a Stalking Horse Agreement (with the precise amount of the Break-Up Fee to be negotiated among the potential Stalking Horse Bidder and the Debtors).  Furthermore, as contemplated in the proposed Bidding Procedures Order attached hereto as **Exhibit A**, the Debtors are seeking: (a) to have the Break-Up Fee allowed as an administrative expense in the amount of the Stalking Horse Bidder's reasonable and documented fees and expenses, including reasonable attorneys' fees, in connection with performing diligence and formulating, negotiating, and finalizing its bid; and (b) to have the Break-Up Fee paid from the sale proceeds, after notice and documentation of the Stalking Horse Bidder's reasonable fees and expenses has been provided to the Debtors, Inland Bank, the Committee, and the U.S. Trustee.

39.     The Bid Protections will, therefore, not be disproportionate to the value of the proposed Sale.  *See, e.g., In re OHCMC-Oswego, LLC*, Case No. 14-05349 (Bankr. N.D. Ill. June 17, 2014) (Docket No. 77) (Doyle, J.) (approving sale procedures that included a 3% break-up fee of $352,500 on a stalking-horse purchase price of $11,750,000); *In re Global Crossing,*

*Ltd.*, 295 B.R. 726, 733 (Bankr. S.D.N.Y. 2003) (observing that "liquidating damages" provision functioned substantially like a break-up fee, court noted approval of break-up fee of $30 million on $250 million transaction, a 12% break-up fee); *In re RSL Com Primecall, Inc.*, No. 01-11457, 2002 Bankr. LEXIS 367 (Bankr. S.D.N.Y. Arp. 11, 2002) (approval of 3% break-up fee); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (break-up fees are generally permissible when reasonable in relation to bidder's efforts and size of transaction).

40.     As a result, courts routinely approve bid protections similar to the Bid Protections in connection with proposed bankruptcy sales where a proposed fee or reimbursement provides a benefit to the estate.  *See In re O'Brien Envtl. Energy, Inc.*, 181 F.3d 527 (3d Cir. 1999).  The Debtors believe that the allowance of the Bid Protections is in the best interests of the Debtors' estates and their creditors, as these protections will only be employed where a Stalking Horse Bid will establish a floor for further bidding that may increase the consideration given in exchange for the Assets for the benefit of the Debtors' estates.

41.     Here, the Break-Up Fee will be negotiated by the parties in good faith and at arms' length (as the Debtors will be prepared to demonstrate at the Sale Hearing), and will therefore be fair and reasonable in view of, among other things, (a) the intensive analysis, due diligence investigation, and negotiation undertaken by the Stalking Horse Bidder in connection with the Sale and (b) the fact that the Stalking Horse Bidder's efforts have established a bid standard for other bidders interested in the Assets, may serve as a catalyst for other potential bidders, and in any case, ensures that the Debtors will obtain a sale price for the Assets acceptable to Inland Bank to satisfy its secured claim, and will otherwise further the goal of maximizing the value for the benefit of their other creditors.

42.     The Break-Up Fee, if provided, will be a material inducement, and condition of, the willingness of the Stalking Horse Bidder (other than Inland Bank) to enter into the Stalking Horse Agreement and serve as the Stalking Horse Bidder, thereby giving the Debtors the benefit of certainty with respect to the transaction with the Stalking Horse Bidder, without sacrificing the potential for interested parties to submit overbids at the Auction.

43.     Any Stalking Horse Bidder will have expended, and will continue to expend, time and resources negotiating and drafting transactional documents and performing due diligence activities necessitated by the Sale transactions, despite the fact that the Debtors will maintain a fiduciary out, and its bid will be subject not only to Court approval, but also to overbidding by third parties.  Any Bid Protections granted to a Stalking Horse Bidder will be negotiated in good faith and at arm's length, with significant give-and-take with respect to those Bid Protections. The Debtors will only agree to the Break-Up Fee where it will ensure that the Debtors will have the benefit of the transaction with the Stalking Horse Bidder, without sacrificing the potential for interested parties to submit overbids at the Auction.  Furthermore, the Break-Up Fee be paid from the sale proceeds, after notice and documentation of the Stalking Horse Bidder's reasonable fees and expenses has been provided to the Debtors, Inland Bank, the Committee, and the U.S. Trustee.

**IV.       The Form and Manner of the Sale Notice Should Be Approved.**

44.     Bankruptcy Rule 2002(a)(2) requires, among other things, that all creditors should receive at least 21 days' notice by mail of the Sale Hearing, unless the Court, for cause shown, shortens the time or directs another method of giving notice.  Pursuant to Bankruptcy Rule 2002(c), such notice must include the time and place of the Auction and the Sale Hearing and the deadline for filing any objections to the Sale.

45.     The Debtors respectfully submit that the Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including: (a) the date, time, and place of the Auction (if one will be held); (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) a reasonably specific identification of the Assets; (e) a description of the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests, and other encumbrances attaching with the same validity and priority to the Sale proceeds; and (f) notice of the proposed assumption and assignment of the Contracts to the Successful Bidder.

46.     The Debtors further submit that notice of this Motion and the related hearing to consider entry of the Bidding Procedures Order, coupled with service of the Sale Notice, the Cure and Possible Assumption and Assignment Notice, and the Assumption Notice, and publication of the Bidding Procedures Notice, as provided for herein, constitutes good and adequate notice of the Sale and the proceedings with respect thereto in compliance with, and satisfaction of, the applicable requirements of Bankruptcy Rule 2002.  The Debtors further submit that the proposed notice procedures are designed to maximize the chance of obtaining the broadest possible participation in the Debtors' marketing process, while minimizing costs to the estates.  Accordingly, the Debtors respectfully request that the Court find that the proposed notice procedures set forth in this Motion are sufficient, and that no other or further notice of the Bidding Procedures, Auction, Sale, or Sale Hearing is required.

**V.      The Assumption and Assignment Procedures
          Are Appropriate and Should Be Approved.**

47.     As set forth above, the Motion contemplates the assumption and assignment of the Contracts to the Successful Bidder(s).  In connection with this process, the Debtors believe it

is necessary to establish a process by which (a) the Debtors and the Contract Counterparties can reconcile cure obligations, if any, in accordance with section 365 of the Bankruptcy Code and (b) the Contract Counterparties can object to the assumption and assignment of the Contracts and/or related cure amounts if a dispute exists.

48.       As set forth in the Bidding Procedures Order, the Debtors also request that any party that fails to object to the proposed assumption and assignment of any Contract be deemed to consent to the assumption and assignment of the applicable Contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order, along with the cure amounts identified in the Assumption and Assignment Notice.  *See, e.g., Hargrave v. Township of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); *Pelican Homestead v. Wooten (In re Gabel)*, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).

49.       The Debtors believe that the Assumption and Assignment Procedures are fair and reasonable, provide sufficient notice to the Contract Counterparties, and provide certainty to all parties in interest regarding their obligations and rights in respect thereof.  Accordingly, the Debtors respectfully request the Court approve the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

**VI.       The Sale Should Be Approved as an Exercise of Sound Business Judgment.**

50.       Section 363(b)(1) of the Bankruptcy Code provides that a debtor, "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A sale of the debtor's assets should be authorized pursuant to section 363 of the Bankruptcy Code if a sound business purpose exists for the proposed transaction. *See, e.g., In re Schipper*, 993 F.2d 513, 515 (7th Cir. 1991) ("Under Section 363, the

debtor in possession can sell property of the estate . . . if he has an 'articulated business justification'"); *see also In re Martin*, 91 F.2d 389, 395 (3d Cir. 1996) (citing *Schipper*); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Telesphere Commc'ns, Inc.*, 179 B.R. 544, 552 (Bankr. N.D. Ill. 1999).

51.     Once the debtor articulates a valid business justification, "[t]he business judgment rule 'is a presumption that in making the business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company." *Integrated Resources*, 147 B.R. at 656; *In re Johns-Manville Corp.*, 60 B.R. 612, 615-016 (Bankr. S.D.N.Y. 1986) ("a presumption of reasonableness attaches to a Debtors' management decisions.").

### A.     The Sale Should Be Approved as an Exercise of Sound Business Judgment.

52.     As set forth above, the Debtors have a sound business justification for selling the Assets at this time, as it will allow the Debtors to satisfy their secured claims and potentially yield proceeds that will allow the Debtors to pay their unsecured obligations.  The sale process outlined in this Motion presents the best opportunity to have the Assets be subject to competing bids, enhancing the Debtors' ability to receive the highest or otherwise best value for the Assets. Consequently, the ultimately successful bid or bids, after being subject to a "market check" in the form of the Auction, will constitute, in the Debtors' reasonable business judgment, the highest or otherwise best offer for the Assets.

### B.     Adequate and Reasonable Notice of the Sale Will Be Provided.

53.     As described above, the Sale Notice: (a) will be served in a manner that provides at least 21 days' notice of the date, time, and location of the Auction and the Sale Hearing; (b) informs interested parties of the deadlines for objecting to the Sale; and (c) otherwise

includes all information relevant to parties interested in or affected by the Sale. Significantly, the form and manner of the Sale Notice will have been approved by this Court pursuant to the Bidding Procedures Order after notice and a hearing before it is served on parties in interest.

### C.    The Sale and Purchase Price Will Reflect a Fair Value Transaction.

54.    It is well-settled that, where there is a court-approved auction process, a full and fair price is presumed to have been obtained for the assets sold, as the best way to determine value is exposure to the market. *See Bank of Am. Nat'l Trust & Sav. Ass'n. v. 203 N. LaSalle St. P'ship*, 526 U.S. 434, 457 (1999); *see also In re Trans World Airlines, Inc.*, No. 01-00056, 2001 WL 1820326, at *4 (Bankr. D. Del. Apr. 2, 2001) (while a "section 363(b) sale transaction does not require an auction procedure, . . . the auction procedure has developed over the years as an effective means for producing an arm's length fair value transaction."). Here, the Bidding Procedures and (if Qualified Bids are received) the Auction will ensure that the Successful Bid(s) reflect the best and highest price, and thus a fair value, for the Assets.

### D.    The Sale and Purchase Price Will Reflect a Fair Value Transaction.

55.    The Debtors request that the Court find that the Successful Bidder(s) are entitled to the benefits and protections provided by section 363(m) of the Bankruptcy Code in connection with the sale of the Assets.

56.    Section 363(m) of the Bankruptcy Code provides in pertinent part:

> [t]he reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease or property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

57.    Section 363(m) of the Bankruptcy Code thus protects the purchaser of assets sold pursuant to section 363 of the Bankruptcy Code from the risk that it will lose its interest in the purchased assets if the order allowing the sale is reversed on appeal, as long as such purchaser leased or purchased the assets in "good faith."   While the Bankruptcy Code does not define "good faith," courts have held that the good faith of a purchaser is shown by the integrity of his conduct during the course of the sale proceedings, finding that where there is a lack of such integrity, a good faith finding may not be made.   *See, e.g., In the Matter of Andy Frain Servs., Inc.*, 798 F.2d 1113 (7th Cir. 1986) (a purchaser's good faith is lost by "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders") (internal citations omitted); *In re Sasson Jeans, Inc.*, 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

58.    The Debtors submit the Successful Bidder(s) will be "good faith purchasers" within the meaning of section 363(m) of the Bankruptcy Code, and the Purchase and Sale Agreement, or any marked versions thereof, will be good faith agreements on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.   *First*, any sale agreement with a Successful Bidder will be the culmination of a competitive auction process in which all negotiations will be conducted on an arm's-length, good faith basis.   Accordingly, the Debtors believe the consideration to be received pursuant to the Auction will be fair and reasonable. *Second*, the Bidding Procedures are designed to ensure that no party is able to exert undue influence over the Sale process.   The Debtors will not choose as the Successful Bidder or Backup Bidder any entity whose good faith under section 363(m) of the Bankruptcy Code can reasonably be doubted, and, as may be necessary, will be prepared to present the Court through testimony or proffer at the Sale Hearing with sufficient evidence to allow the Court to find that the "good

faith" standard of section 363(m) of the Bankruptcy Code has been satisfied.  **Third**, any Bid(s) that the Debtors ultimately determine to be Successful Bid(s) will have been evaluated and approved by the Debtors in consultation with their advisors.  Accordingly, the Debtors believe that the Successful Bidder(s) and Purchase and Sale Agreement (or marked version thereof) should be entitled to the full protections of section 363(m) of the Bankruptcy Code.

### E.     The Sale Should Be Approved "Free and Clear" Under § 363(f).

59.     Section 363(f) of the Bankruptcy Code permits a debtor to sell property free and clear of another party's interest in the property if: (a) applicable nonbankruptcy law permits such a free and clear sale; (b) the holder of the interest consents; (c) the interest is a lien and the sale price of the property exceeds the value of all liens on the property; (d) the interest is the subject of a bona fide dispute; or (e) the holder of the interest could be compelled in a legal or equitable proceeding to accept a monetary satisfaction of its interest.  *See* 11 U.S.C. § 363(f).  The term "any interest," as used in section 363(f) of the Bankruptcy Code, is not defined anywhere in the Bankruptcy Code.  The Seventh Circuit, however, has construed the term "any interest" to be "very broad."  *See Precision Indus., Inc. v. Qualitech Steel SBQ, LLC*, 327 F.3d 537, 545 (7th Cir. 2003); *Compak Co., LLC v. Johnson*, 415 B.R. 334, 338-39 (N.D. Ill. 2009).

60.     Section 363(f) is drafted in the disjunctive.  Thus, satisfaction of any of the requirements enumerated therein will suffice to warrant the Debtors' sale of the Assets free and clear of all interests (*i.e.*, all liens, claims, rights, interests, charges, or encumbrances), except with respect to any interests that may be assumed liabilities under the applicable Purchase and Sale Agreement.  *See Compak*, 415 B.R. at 338 ("Section 363(f) authorizes bankruptcy courts to approve the sale of a debtor's property 'free and clear of any interest in such property' if one of five conditions is satisfied.").

61.    The Debtors submit that any interest that will not be an assumed liability satisfies or will satisfy at least one of the five conditions of section 363(f) of the Bankruptcy Code, and that any such interest will be adequately protected by either being paid in full at the time of closing, by having it attach to the net proceeds of the Sale, subject to any claims and defenses the Debtors may possess with respect thereto, or by consenting to the Sale.  The Debtors accordingly request authority to convey the Assets to the Successful Bidder(s) free and clear of all liens, claims, rights, interests, charges, and encumbrances, with any such liens, claims, rights, interests, charges, and encumbrances to attach to the proceeds of the Sale.

**VII.       The Assumption and Assignment of Contracts Should Be Approved.**

        **A.       The Assumption and Assignment of Contracts
               Reflects the Debtors' Reasonable Business Judgment.**

62.    To facilitate and effectuate the sale of the Assets, the Debtors are seeking authority to assign or transfer the Contracts to the Successful Bidder(s) to the extent required by such bidders.

63.    Section 365 of the Bankruptcy Code authorizes a debtor in possession to assume and/or assign its executory contracts and unexpired leases, subject to the approval of the Court, provided that the defaults under such contracts and leases are cured and adequate assurance of future performance is provided.  A debtor's decision to assume or reject an executory contract or unexpired lease must only satisfy the "business judgment rule" and will not be subject to review unless such decision is clearly an unreasonable exercise of such judgment.  *See, e.g., Group of Institutional Investors v. Chi., Milwaukee, St. Paul & Pac. Ry. Co.*, 318 U.S. 523 (1943) (applying Bankruptcy Act section 77(b), predecessor to Bankruptcy Code section 365, and rejecting test of whether executory contract was burdensome in favor of whether rejection is within debtor's business judgment); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990)

("[T]he standard to be applied for approval of the assumption [of an executory contract] is the business judgment standard . . . .").

64.    Here, the Court should approve the decision to assume and assign the Contracts in connection with the Sale as a sound exercise of the Debtors' business judgment.  The Contracts largely consist of service or supply agreements related to the Debtors' operations  and, as such are only beneficial to the owner of the Assets.  However, they may be essential to inducing the best offer for the Assets on a going-concern basis.  In addition, the Contracts will be assumed and assigned though the process approved by the Court pursuant to the Bidding Procedures Order and, thus, will be reviewed by key constituents in these chapter 11 cases.  Accordingly, the Debtors submit that the assumption and assignment of the Contracts by way of the Assumption and Assignment Procedures should be approved as an exercise of their business judgment.

### B.    Defaults Under the Assumed Contracts, if Any, Will Be Cured Through the Sale.

65.    Upon finding that a debtor has exercised its business judgment in determining that assuming an executory contract is in the best interest of its estate, courts must then evaluate whether the assumption meets the requirements of section 365(b) of the Bankruptcy Code: that a debtor (a) cure, or provide adequate assurance of promptly curing, prepetition defaults in the executory contract; (b) compensate parties for pecuniary losses arising therefrom; and (c) provide adequate assurance of future performance thereunder.  This section "attempts to strike a balance between two sometimes competing interests, the right of the contracting nondebtor to get the performance it bargained for and the right of the debtor's creditors to get the benefit of the debtor's bargain."  *In re Luce Indus., Inc.*, 8 B.R. 100, 107 (Bankr. S.D.N.Y. 1980).

66.     The Debtors submit that the statutory requirements of section 365(b)(1)(A) of the Bankruptcy Code will be satisfied (and promptly) because the Purchase and Sale Agreement will require that the Successful Bidder cure all defaults associated with, or that are required to properly assume, the Contracts.   Because the Bidding Procedures Order (once approved) provides a clear process by which to resolve disputes over cure amounts or other defaults, the Debtors are confident that if defaults exist that must be cured, such cure will be achieved fairly, efficiently, and properly, consistent with the Bankruptcy Code and with due respect to the rights of non-debtor parties.

### C.     Non-Debtors Parties Will Be Adequately Assured of Future Performance.

67.     Similarly, the Debtors submit that the third requirement of section 365(b)(1)(C) of the Bankruptcy Code—adequate assurance of future performance—is also satisfied given the facts and circumstances present here.   "The phrase 'adequate assurance of future performance' adopted from section 2-609(1) of the Uniform Commercial Code, is to be given a practical, pragmatic construction based upon the facts and circumstances of each case." *In re U.L.  Radio Corp.*, 19 B.R. 537, 542 (Bankr. S.D.N.Y. 1982).   Although no single solution will satisfy every case, "the required assurance will fall considerably short of an absolute guarantee of performance." *In re Prime Motor Inns Inc.*, 166 B.R. 993, 997 (Bankr. S.D. Fla. 1994).   Among other things, adequate assurance may be given by demonstrating the assignee's financial health and experience in managing the type of enterprise or property assigned. *See In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (adequate assurance of future performance present where a prospective assignee has financial resources and has expressed a willingness to devote sufficient funding to a business to give it a strong likelihood of succeeding).

68.     The Debtors believe that they can and will demonstrate that the requirements for assumption and assignment of the Contracts will be satisfied.  *First*, the Stalking Horse Bidder will certainly have the wherewithal to ensure that the counterparties to the Contracts will receive the benefit of their original bargains (as the Debtors will be prepared to demonstrate at the Sale Hearing).  *Second*, as required by the Bidding Procedures, the Debtors will evaluate the financial wherewithal of potential bidders before designating such party a Qualified Bidder (as defined in the Bidding Procedures) (*e.g.*, financial credibility, willingness, and ability of the interested party to perform under the Contracts) and will demonstrate such financial wherewithal, willingness, and ability to perform under the Contracts.  Further, the Assumption and Assignment Procedures provide the Court and other interested parties with ample opportunity to evaluate and, if necessary, challenge the ability of the Successful Bidder(s) to provide adequate assurance of future performance and object to the assumption and assignment of the Contracts or proposed cure amounts.  The Court therefore should have a sufficient basis to authorize the Debtors to reject or assume and assign the Contracts as set forth in the Purchase and Sale Agreement.

**VIII.        Relief Under Bankruptcy Rules 6004(h) and 6006(d) Is Appropriate.**

69.     Bankruptcy Rule 6004(h) provides that an "order authorizing the use, sale, or lease of property . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."   Additionally, Bankruptcy Rule 6006(d) provides that an "order authorizing the [debtor] to assign an executory contract or unexpired lease . . . is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise."  The Debtors requests that the Sale Order be effective immediately upon its entry by providing that the 14-day stays under Bankruptcy Rules 6004(h) and 6006(d) are abrogated.

70.     The purpose of Bankruptcy Rules 6004(h) and 6006(d) is to provide sufficient time for an objecting party to appeal before an order can be implemented.  *See* Advisory

Committee Notes to Fed. R. Bankr. P. 6004(h) and 6006(d).   Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should "order otherwise" and eliminate or reduce the 14-day stay period, *Collier* suggests that the 14-day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure."   10 *Collier on Bankruptcy* ¶ 6004.11 (15 rev. ed. 2006). Furthermore, if an objection is filed and overruled, and the objecting party informs the court of its intent to appeal, the stay should also be reduced to the amount of time actually necessary to file such appeal.  *Id.*

71.     To maximize the value received for the Assets, the Debtors seek to close the Sale as soon as possible after the Sale Hearing.   Accordingly, the Debtors hereby requests that the Court waive the 14-day stay period under Bankruptcy Rules 6004(h) and 6006(d).

### Notice

72.     The Debtors have caused notice of this Motion to be given to the following parties: (a) the U.S. Trustee; (b) the Contract Counterparties; (c) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; and (d) all parties who have filed appearances or requested notices through the Court's CM/ECF system in this chapter 11 case.  Further, after entry of the Bidding Procedures Order, the Sale Notice will be provided in accordance with the notice procedures described herein.  The Debtors submit that, in light of the nature of the relief requested, no other or further notice need be given.

## Waiver of Page Limit Restrictions

73.     Given the complexity of issues addressed herein, the Debtors respectfully request that the 15-page limit established by Rule 5005-3(D) of the Local Rules for the United States Bankruptcy Court for the Northern District of Illinois be waived for this Motion.

## No Prior Request

74.     No prior motion for the relief requested herein has been made to this or any other court.

WHEREFORE, for the reasons set forth herein, the Debtors respectfully request that this Court (a) enter the Bidding Procedures Order (i) authorizing and approving the Bidding Procedures, (ii) approving the Sale Notice and the form and manner of notice of the Auction and Sale Hearing, (iii) scheduling the Auction and Sale Hearing, and (iv) approving the Assumption Procedures; (b) at the conclusion of the Sale Hearing, enter an order substantially in the form of the Sale Order that, among other things, (i) approves an asset purchase agreement for the Sale, (ii) approves the results of the Auction, if any, and authorizes the Sale of the Assets to the Successful Bidder, and (iii) authorizes the assumption and assignment of the Contracts to the Successful Bidder; and (c) grant such other relief as the Court deems just and proper.

Dated: October 12, 2017

Respectfully submitted,

**THE HARRINGTON & KING
PERFORATING CO., INC. and
HARRINGTON & KING SOUTH, INC.**

By:   _/s/ Sara E. Lorber_
      One of Its Attorneys

William J. Factor (6205675)
Sara E. Lorber (6229740)
**FACTORLAW**
105 West Madison Street, Suite 1500
Chicago, Illinois 60602
Telephone: 312-878-6146
Facsimile: 847-574-8233
Email: wfactor@wfactorlaw.com
        slorber@wfactorlaw.com
*Counsel for the Debtors*

**<u>Exhibit A to the Motion</u>**

**Bidding Procedures Order**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE HARRINGTON & KING PERFORATING CO., INC., *et al.*,[1] | Case No. 16-15650 (Jointly Administered) |
| Debtors. | Hon. Deborah L. Thorne |

**ORDER (A) APPROVING BIDDING PROCEDURES AND BID
PROTECTIONS IN CONNECTION WITH THE SALE OF SUBSTANTIALLY
ALL OF THE DEBTORS' ASSETS, (B) APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (C) SCHEDULING AN AUCTION AND A SALE HEARING,
(D) APPROVING PROCEDURES FOR THE ASSUMPTION AND ASSIGNMENT
OF CONTRACTS AND LEASES, AND (F) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***") of The Harrington & King Perforating Co., Inc. ("***H&K***") and Harrington & King South, Inc. ("***H&K South***"), as debtors and debtors in possession (collectively, the "***Debtors***") for, among other things, entry of (a) an order (this "***Bidding Procedures Order***") (i) authorizing and approving the bidding procedures attached hereto as **Exhibit 1** (the "***Bidding Procedures***") in connection with the sale of substantially all of the Debtors' assets (the "***Assets***") in one or more sales, (ii) approving the form and manner of notice attached hereto as **Exhibit 2** (the "***Sale Notice***") of an auction (the "***Auction***") and sale hearing (the "***Sale Hearing***") with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (the "***Sale***"), (iii) scheduling the Auction and Sale Hearing, (iv) approving procedures for the assumption and assignment (as set forth herein, the "***Assumption Procedures***") of certain executory contracts and unexpired leases in connection

---

[1] Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtors' federal tax identification numbers are: (a) The Harrington & King Perforating Co., Inc. (3190); and (b) Harrington & King South, Inc. (7859). The location of the Debtors' principal place of business and their address for notice purposes is 5655 West Fillmore Street, Chicago, Illinois 60644, Attn: Greg McCallister, Chief Restructuring Officer and Chief Operating Officer.

with the Sale (collectively, the "***Contracts***") and (v) authorizing the Debtors, in the exercise of their reasonable business judgment and after consultation with Inland Bank (A) to enter into a stalking-horse agreement (the "***Stalking Horse Agreement***") with a bidder if the Debtors believe in their business judgment, and after consultation with Inland Bank and Trust ("***Inland Bank***") and the Official Committee of Unsecured Creditors (the "***Committee***"), that such an agreement will further the purpose of the Auction and to offer a stalking-horse bidder (the "***Stalking Horse Bidder***") any or all of the following as part of a Stalking Horse Agreement (1) a break-up fee (the "***Break-Up Fee***") in an amount to be determined by the Debtors, not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement and (2) initial overbid protection in the amount of $100,000 (the "**Initial Overbid**" and, together with the Break-Up Fee, the "**Bid Protections**"); and (b) at the conclusion of the Sale Hearing, an order substantially in the form attached to the Motion as **Exhibit B** (the "***Sale Order***") (i) authorizing and approving the Sale of the Assets to the Successful Bidder (as defined in the Bidding Procedures) on the terms substantially set forth in the Successful Bid, (ii) authorizing and approving the Sale of all or substantially all of the Assets free and clear of liens, claims, encumbrances, and other interests in the Assets, all in accordance with the Successful Bid, (iii) authorizing the assumption and assignment of the Contracts, and (iv) granting any related relief; and the Court having considered the Motion and all pleadings associated with that motion; upon the arguments of counsel and the evidence presented at the hearing consider the Bidding Procedures and this Bidding Procedures Order; and after due deliberation and sufficient cause therefor,

**THE PARTIES STIPULATE THAT**:

A.      Capitalized terms not otherwise defined in this order shall have the respective meanings attributed to such terms in the Motion.

B.      This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 1334 and 157(b).  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

C.      The Sale of Debtors' Assets will be subject to higher and better offers, if any, and the opportunity for public auction and sale, free and clear of all liens, claims, encumbrances, and interests.

D.      Notice of the Motion has been given to: (a) the Office of the United States Trustee (the "***U.S. Trustee***"); (b) the non-debtor parties to the Contracts (the "***Contract Counterparties***"); (c) all parties who have expressed an interest in the Assets; (d) all parties who are known or reasonably believed, after reasonable inquiry, to have asserted any lien, encumbrance, claim, or other interest in the Assets; (e) the Internal Revenue Service; (f) all applicable state and local taxing authorities; (g) each governmental agency that is an interested party with respect to the Sale; (h) all known creditors of the Debtors; and (i) all parties who have filed appearances or requested notices through the Court's CM/ECF system in this chapter 11 case

E.      The Debtors have articulated good and sufficient reasons for this Court to (a) approve the Bidding Procedures; (b) schedule the Auction and Sale Hearing and approve the Sale Notice and the manner of notice of the Auction and Sale Hearing; (c) approve procedures for the assumption and assignment of the Contracts, including the Assumption and Assignment Notice; (d) authorize the Debtors, subject to consultation with Inland Bank and the Committee,

to enter into a Stalking Horse Agreement and extend to a Stalking Horse Bidder the Bid Protections in the exercise of their reasonable business judgment.

F.      The Break-Up Fee shall, if triggered, be (a) deemed an actual and necessary cost and expense of preserving the Debtors' estate, within the meaning of sections 503(b) and 507(a)(2) of the Bankruptcy Code in the amount of the Stalking Horse Bidder's reasonable and documented fees and expenses, including reasonable attorneys' fees, in connection with performing diligence and formulating, negotiating and finalizing its bid, in an amount not to exceed 3 percent of the total purchase price offered by the Stalking Horse Bidder; (b) commensurate to the real and substantial benefit conferred upon the Debtors' estates by the Stalking Horse Bidder; (c) reasonable and appropriate, including in light of the size and nature of the proposed Sale and comparable transactions, the commitments that have been made, and the efforts that have been and will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to better and higher offers; and (d) necessary to induce the Stalking Horse Bidder to pursue the Sale and to be bound by the Stalking Horse Agreement.

**BASED UPON THE FOREGOING, THE COURT FINDS THAT:**

G.      The Bidding Procedures are reasonable and appropriate and represent the best method for maximizing the value of the Assets for the benefit of the Debtors and their estates.

H.      ***Assumption and Assignment Procedures.***     The Motion, this Order, and the assumption and assignment procedures (the "***Assignment Procedures***") set forth herein are reasonably calculated to provide counterparties to any Contracts to be assumed by the Debtors and assigned to the Successful Bidder with proper notice of the intended assumption and assignment of their Contracts, the procedures in connection therewith, and any cure amounts relating thereto.

I.      **Sale Notice.**   The Sale Notice is reasonably calculated to provide interested parties with timely and proper notice of the proposed Sale, including, without limitation: (a) the date, time, and place of the Auction (if one is held); (b) the Bidding Procedures; (c) the deadline for filing objections to the Sale and entry of the Sale Order, and the date, time, and place of the Sale Hearing; (d) reasonably specific identification of the Assets to be sold; (e) a description of the Sale as being free and clear of liens, claims, encumbrances, and other interests (collectively, "**Interests**"), with all such Interests attaching with the same validity and priority to the Sale proceeds; (f) notice of the proposed assumption and assignment of Contracts to the Successful Bidder.  No other or further notice of the Sale shall be required.

J.      Good and sufficient cause exists for the entry of this Bidding Procedures Order.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED AS FOLLOWS:**

1.      The Motion is hereby granted as set forth below.

2.      The Bidding Procedures, substantially in the form attached hereto as **Exhibit 1**, are hereby approved in their entirety, and the Bidding Procedures shall govern the submission, receipt, and analysis of all Bids relating to the proposed sale of the Assets.  Any party desiring to bid on the asset shall comply with the Bidding Procedures in this Order.  The Debtors are authorized to take any and all actions necessary to implement the Bidding Procedures.

3.      All objections to the relief requested in the Motion with respect to the Bidding Procedures that have not been withdrawn, waived, or settled as announced to the Court at the hearing on the Motion or by stipulation filed with the Court, are overruled.

4.      The Debtors are authorized, subject to the reasonable exercise of their business judgment and consultation with Inland Bank and the Committee, to designate a Qualified Bidder

as the Stalking Horse Bidder and to enter into a Stalking Horse Agreement with such Qualified

Bidder no later than November 20, 2017 (the "***Stalking Horse Bidder Designation Deadline***"),

and to offer the Stalking Horse Bidder (provided that the Stalking Horse Bidder is not Inland

Bank or an affiliate of Inland Bank, or an insider the Debtors) the Break-Up Fee in an amount to

be determined by the Debtors, not to exceed 3 percent of the total purchase price offered by the

Stalking Horse Bidder in the Stalking Horse Agreement.  With respect to a Stalking Horse

Bidder that is Inland Bank or an affiliate of Inland Bank, such Stalking Horse Bidder shall not be

entitled to a Break-Up Fee as part of its Bid Protections.

5.      The Debtors are authorized, subject to the reasonable exercise of their business

judgment and consultation with Inland Bank, to award any Stalking Horse Bidder, including

Inland Bank or its designee, initial overbid protection in the amount of $100,000 (the "***Initial***

***Overbid***" and, together with the Break-Up Fee, the "***Bid Protections***").

6.      If a Stalking Horse Bidder is designated on or before the Stalking Horse

Designation Deadline, the Debtors shall file a notice of designation of a Stalking Horse Bidder

with the Court and serve the notice on all creditors and the U.S. Trustee.

7.      With respect to a Stalking Horse Bidder that is an insider of the Debtors, the

Debtors may file a motion on an expedited basis with the Court for approval of granting Bid

Protections to such Stalking Horse Bidder.

8.      The Debtors' obligation to pay the Break-Up Fee and the Expense

Reimbursement shall survive the termination of the Stalking Horse Agreement and shall be

payable only by the Debtors upon the closing of a Sale for the Assets with a Successful Bidder

other than the Stalking Horse Bidder.  The Break-Up Fee shall be paid immediately upon

consummation of the Sale out of the proceeds of the Sale and shall have priority as an

administrative expense in the Debtors' chapter 11 cases pursuant to section 503(b) and 507(a) of

the Bankruptcy Code.

9.      The following procedures shall apply with respect to executory contracts and/or

unexpired leases that are proposed to be assumed and assigned pursuant to the Purchase

Agreement (collectively the "***Contracts***"):

(a)      Any interested party seeking to object to the assumption and assignment to any bidder, or to the validity of the cure cost amount, if any, as set forth in the Notice of Sale and Assumption and Assignment of Contracts (the "***Assumption***"), or to otherwise assert that any amounts, defaults, conditions, or pecuniary losses, whether monetary or nonmonetary (including accrued but not yet due obligations) must be cured or satisfied under any of the Contracts in order for such contract or lease to be assumed and/or assigned (collectively, a "***Cure Cost***"), must file and serve an objection (an "***Assumption/Assignment Objection***") so that such Assumption/Assignment Objection is docketed and received by the Service Parties not later than the Bid Deadline (the "***Assumption/Assignment Objection Deadline***").

(b)      An Assumption/Assignment Objection must set forth with specificity any and all Cure Costs which such party asserts must be cured or satisfied in connection with the assumption and assignment of such Assumed Contract; provided, however, that any party to an Assumed Contract shall retain the right to object solely with respect to adequate assurance of future performance until the Sale Hearing only if such objection was raised in an Assumption/Assignment Objection on or prior to the Assumption/Assignment Objection Deadline.  An Assumption/Assignment Objection shall set forth the cure amount that the objector asserts is due, the specific types and dates of the alleged defaults, pecuniary losses and conditions (whether monetary or nonmonetary to assumption and assignment, and the support therefor, and all other objections to assumption and assignment.

(c)      Unless an Assumption/Assignment Objection is filed and served by the Assumption/Assignment Objection Deadline, all interested parties who have received actual notice of these procedures shall be deemed to have waived and released any right to assert a Cure cost and to have otherwise consented to the assumption and assignment and shall be forever barred and estopped from asserting or claiming against the Debtors, the purchaser of the Assets, or any other assignee of the relevant Assumed Contract that any additional amounts are due or defaults exist, or conditions to assignment must be satisfied, under such contract for the period prior to the Closing Date.  Upon entry of the Sale Order and Closing of the sale of the Assets, each non-debtor party to each Assumed Contract will be required to fully perform all duties and obligations arising under such Assumed Contract, according to its terms.

(d)      Hearings with respect to any Assumption/Assignment Objections may be held (i) at the Sale Hearing, or (ii) at such other date as the Court may designate; provided that the subject Assumed Contract may be assumed and assigned prior to resolution of any Assumption/Assignment Objection if the cure amount asserted by the objecting party (or such lower amount as may be fixed by the Court) is deposited by the Debtors to be held in a segregated account maintained by the Debtors or such other person as the Court may direct pending further order of the Court or mutual agreement of the parties.

(e)      The Debtors will serve the Assumption Notice on all parties to the Contracts.

10.      The proposed form of Assumption and Assignment Notice attached hereto as **Exhibit 3** is hereby approved, and the Debtors are authorized to serve, via first-class U.S. mail, the Assumption and Assignment Notice, and no other notice is necessary or required with respect to the assumption and assignment of the Contracts.

11.      In the event the party who submits the highest and best bid for the Assets fails to close on the sale through no fault of the Debtors, such party's earnest money deposit shall be forfeited to the Debtors.

12.      Such Break-Up Fee is allowed as an administrative expense priority in the amount of the Stalking Horse Bidder's reasonable and documented fees and expenses, including reasonable attorneys' fees, in connection with performing diligence and formulating, negotiating, and finalizing its bid.  The Break-Up fee shall be paid from the sale proceeds, after notice and documentation of the Stalking Horse Bidder's reasonable fees and expense to the Debtors, Inland Bank, the Committee, and the U.S. Trustee.  The Debtors' obligations to pay the Break-Up Fee: (a) shall survive termination of the Stalking Horse Agreement, according to the terms thereof; and (b) shall be binding on any successor to the Debtors, including any trustee subsequently appointed in this case.

13.      The Debtors' and the Stalking Horse Bidder's rights to the Deposit shall be governed by this Bidding Procedures Order.  If the Stalking Horse Agreement is terminated, the

Deposit shall be released to the Stalking Horse Bidder or the Debtors in accordance with the terms of the Stalking Horse Agreement and this Bidding Procedures Order without further notice or order of the Court (and the automatic stay under section 362 of the Bankruptcy Code is hereby modified to the extent necessary to permit such release and any actions that may be necessary or proper for any party to take to effectuate such release in accordance with the terms of the Stalking Horse Agreement).

14.     This Court retains jurisdiction over any matters related to or arising from: (a) the implementation of this Bidding Procedures Order; and (b) the Stalking Horse Agreement and all related agreements.

15.     The Auction, if necessary, will be held at the offices of Inland Bank's counsel, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606 on December 12, 2017 at 10:00 a.m. Central Time, or such other location as identified by the Debtors after notice to all Qualified Bidders.

16.     Except as otherwise set forth herein with respect to objections to proposed cure amounts or the assumption and assignment of Contracts, objections, if any, to the relief requested in the Sale Motion must: (a) be in writing, (b) conform with applicable provisions of the Bankruptcy Rules and the Local Rules of the Court, (c) state with particularity the legal and factual bases for the objection, (d) be filed with the Court and served on the following parties (the "***Notice Parties***") so as to be actually received no later than December 13, 2017 at 5:00 p.m. Central Time (the "***Sale Objection Deadline***"): (i) counsel for the Debtors, FactorLaw, 105 West Madison Street, Suite 1500, Chicago, Illinois 60602, Attn: William J. Factor and Sara E. Lorber (wfactor@wfactorlaw.com; slorber@wfactorlaw.com); (ii) counsel for Inland Bank, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, Attn: David J. Fischer and Phillip W.

Nelson (david.fischer@lockelord.com; phillip.nelson@locklord.com); counsel for the Creditors'

Committee, Goldstein & McClintock LLLP, 111 West Washington Street, Suite 1221, Chicago,

Illinois 60602, Attn: Thomas R. Fawkes and Brian J. Jackiw (tomf@goldmclaw.com;

brianj@goldmclaw.com); and (iv) the office of the United States Trustee for the Northern

District of Illinois, 219 S. Dearborn St., Chicago, Illinois 60604, Attn.: Patrick S. Layng and

Denise DeLaurent (USTPRegion11.ES.ECF@usdoj.gov; denise.delaurent@usdoj.gov). A

party's failure to timely file or make an objection shall be deemed to constitute such party's

consent to entry of the Sale Order and consummation of the Sale and all transactions related

thereto.

17.     The Sale Hearing to consider approval of the Sale to the Successful Bidder shall

take place on December 14, 2015, at 10:00 a.m. Central Time.

Enter:

Dated:                                          _____
                                                United States Bankruptcy Judge


**Prepared by:**
William J. Factor (6205675)
Sara E. Lorber (6229740)
**FACTORLAW**
105 West Madison Street, Suite 1500
Chicago, Illinois 60602
Telephone: 312-878-6146
Facsimile: 847-574-8233
Email:  wfactor@wfactorlaw.com
        slorber@wfactorlaw.com
*Counsel for the Debtors*

**<u>Exhibit 1 to the Bidding Procedures Order</u>**

**Bidding Procedures**

| In re: | Chapter 11 Reorganization |
|---|---|
| THE HARRINGTON & KING PERFORATING CO., INC., *et al.*,[1] | Case No. 16-15650 (Jointly Administered) |
| Debtors. | Hon. Deborah L. Thorne |

## BIDDING PROCEDURES

On [_____], the United States Bankruptcy Court for the Northern District of Illinois (the "***Court***") entered the *Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially All of the Debtors' Assets, (B) Approving the Form and Manner of Notice Thereof, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts and Leases, and (F) Granting Related Relief* (the "***Bidding Procedures Order***"), by which the Court approved the following procedures (the "***Bidding Procedures***").

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct an auction (the "***Auction***") for the sale or sales (the "***Sale***") of substantially all of the Debtors' assets (the "***Assets***").[2]

## A.     As-Is, Where-Is

The proposed transfer of any of the Assets will be on an "as-is, where-is" basis and without representations or warranties of any kind, nature, or description by the Debtors, other than those set forth in any Stalking Horse Agreement (as defined in the Bidding Procedures Order).  All of the applicable Debtors' right, title, and interest in and to the Assets will be transferred free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options, *lis pendens*, and interests in accordance with section 363(f) of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), except as otherwise agreed by the Debtors.

Each Bidder for the Assets will be deemed to acknowledge and represent that it: (a) has had an opportunity to conduct due diligence regarding the Assets prior to making its Bid; (b) has relied solely upon its own independent review, investigation, and inspection of any document including, without limitation, executory contracts and unexpired leases, in making its Bid; and (c) did not rely upon or receive any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied by operation of law, or otherwise,

---

[1]  Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtors' federal tax identification numbers are: (a) The Harrington & King Perforating Co., Inc. (3190); and (b) Harrington & King South, Inc. (7859). The location of the Debtors' principal place of business and their address for notice purposes is 5655 West Fillmore Street, Chicago, Illinois 60644, Attn: Greg McCallister, Chief Restructuring Officer and Chief Operating Officer.

[2]  Capitalized terms used as defined terms herein and not otherwise defined shall have the meanings ascribed to them in the Bidding Procedures Order.

with respect to the Assets, or the completeness of any information provided in connection with the Sale or the Auction.

## B.   Bid Requirements

Any proposal, solicitation, or offer (each, a "**Bid**") by a person interested in the Assets (such person who submits a Bid, a "**Bidder**") other than the Stalking Horse Bid must be submitted in writing and determined by the Debtors, in their reasonable business judgment, to have satisfied the following requirements (collectively, the "**Bid Requirements**"):

(a)     ***The Assets***: A Bid should propose a Sale involving substantially all of the Debtors' Assets. The Debtors shall evaluate all Bids to determine whether such Bid(s) maximizes the value of the Debtors' estates as a whole. The transaction documents shall also identify any executory contracts and unexpired leases of the Debtors that the Bidder wishes to have assumed and assigned to it (collectively, the "***Assigned Contracts***"). The Debtors may consider proposals for less than substantially all of the Debtors' Assets or operations, and the Assets may be sold in lots pursuant to one or more final orders of the Court. A Bid to purchase only certain Assets of the Debtors shall include a purchase price determined by such Bidder but shall be reviewed by the Debtors in consultation with Inland Bank to evaluate the sufficiency of the purchase price.

(b)     **Stalking Horse Bidder Designation Deadline:** The Debtors will designate a Stalking Horse Bidder on or before November 20, 2017 (the "***Stalking Horse Bidder Designation Deadline***"). Any potentially interested purchaser of the Assets that desires to be considered as the Stalking Horse Bidder should submit its Qualified Bid on or before November 13, 2017 at 11:59 p.m. (Central Time) (the "***Stalking Horse Bid Submission Deadline***"). If no Qualified Bids are received by the Stalking Horse Bid Submission Deadline, or if the Debtors determine (after consultation with Inland Bank) not to designate any received Qualified Bids as a Stalking Horse Bid, Inland Bank will be designated as the Stalking Horse Bidder with a credit bid of the full amount of their debt, approximately $4.3 million.

(c)     ***Bid Requirements***: Any Bid (other than the Stalking Horse Bid, as defined herein) must be submitted in writing no later than the Bid Deadline and determined by the Debtors, in their reasonable business judgment, to have satisfied the following requirements:

     i.   ***Purchase Price***: Each Bid must clearly set forth the proposed purchase price to be paid in cash. The proposed purchase price must exceed the Stalking Horse Bid by at least the Break-Up Fee, in applicable, plus the $100,000 Overbid amount).

     ii.   ***Deposit***: Each Bid must be accompanied by a cash deposit in the amount equal to ten percent (10%) of the proposed purchase price to be held in a

non-interest-bearing escrow account to be identified and established by the Debtors (the "***Deposit***").

iii. ***Purchase and Sale Agreement***: Each Bid must expressly include an asset purchase agreement with a blackline clearly marked to show changes requested by the Bidder against the Stalking Horse Agreement, in any.

iv. ***Same or Better Terms***: Except as otherwise provided in the Bidding Procedures, each Bid must be, in the Debtors' reasonable business judgment, substantially on the same or better terms that the terms of the Stalking Horse Agreement.  Each Bid must include duly executed transaction documents necessary to effectuate the Sale (the "***Bid Documents***").

v. ***Demonstrated Financial Capacity, Committed Financing***: A Bidder must have, in the Debtors' reasonable business judgment, the necessary financial capacity to consummate the proposed transactions required by the Bid.  Each Bid must also include committed financing, documented to the Debtors' reasonable satisfaction, that demonstrates the Bidder has sufficient liquid assets, or has received sufficient debt and/or equity funding commitments, to satisfy the Bidder's Purchase Price and other obligations under its Bid, including without limitation, the identity and the contact information of the specific person(s) or entity(s) responsible for such committed financing whom the Debtors should contact regarding such committed financing.  Such funding commitments shall not be subject to any internal approvals, syndication requirements, diligence, or credit committee approvals, and shall have covenants and conditions reasonably acceptable to the Debtors in their business judgment.

vi. ***Identity***: Each Bidder must fully disclose the identity of each entity that will be bidding or otherwise participating in connection with such Bid (including each equity holder or other financial backer of the Bidder if such Bidder is an entity formed for the purpose of consummating the proposed transaction contemplated by such), and the complete terms of such participation.  Under no circumstances may any undisclosed principals, equity holders, or financial backers be associated with any Bid. Each Bid must also include contact information for the specific person(s) whom the Debtors should contact regarding such Bid.

vii. ***Contingencies, No Financing or Diligence Outs***: A Bid shall not be conditioned on the obtaining or the sufficiency of financing or any internal approval, on the outcome or review of due diligence, but may be subject to the accuracy at the closing of specified representations and warranties or the satisfaction at the closing of specified conditions, which shall not be more burdensome, in the Debtors' reasonable business judgment, than those set forth in the Stalking Horse Agreement.

viii. ***Irrevocable***: A Bidder's Bid shall be irrevocable unless and until the Debtors except a higher Qualified Bid (as defined herein) and such Bidder is not selected as the Backup Bid (as defined herein).

ix. ***Expenses***: Each Bidder presenting a Bid or Bids shall bear its own costs and expenses (including legal fees) in connection with the proposed transaction.

x. ***Authorization***: Each Bid must contain evidence that the Bidder has obtained authorization or approval from its Board of Directors (or a comparable governing body acceptable to the Debtors) with respect to the submission of its Bid and the consummation of the transaction contemplated in such Bid.

xi. ***As-Is, Where-Is***: Each Bid must include a written acknowledgment and representation that the Bidder: (A) has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its offer; (B) has relied solely upon its own independent review, investigation, and/or inspection of any documents and/or the Assets in making its Bid; and (C) did not rely upon any written or oral statements, representations, promises, warranties, or guarantees whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets for the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Bidder's proposed Purchase and Sale Agreement.

xii. ***Offer to Remain Open***: Each Bid must specify that it shall remain open for at least sixty (60) days.

**C.     Bid Deadline**

Each Bid must be transmitted via e-mail (in .pdf or similar format) so as to be ***actually received*** on or before **December 11, 2017 at 11:59 p.m. Central Time** (the "***Bid Deadline***") by each of the following parties (the "***Notice Parties***"):

(a)     counsel for the Debtors, FactorLaw, 105 West Madison Street, Suite 1500, Chicago, Illinois 60602, Attn: William J. Factor and Sara E. Lorber (wfactor@wfactorlaw.com; slorber@wfactorlaw.com);

(b)     counsel for Inland Bank, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, Attn: David J. Fischer and Phillip W. Nelson (david.fischer@lockelord.com; phillip.nelson@locklord.com);

(c)     counsel for the Committee, Goldstein & McClintock LLLP, 111 West Washington Street, Suite 1221, Chicago, Illinois 60602, Attn: Thomas R. Fawkes and Brian J. Jackiw (tomf@goldmclaw.com; brianj@goldmclaw.com); and

(d)     the office of the United States Trustee for the Northern District of Illinois, 219 S. Dearborn St., Chicago, Illinois 60604, Attn.: Patrick S. Layng and Denise DeLaurent (USTPRegion11.ES.ECF@usdoj.gov; denise.delaurent@usdoj.gov).

**D.     Qualified Bidders**

(a)     A Bid that satisfies each of the Bid Requirements, as determined in the Debtors' reasonable business judgment, shall constitute a "***Qualified Bid***," and such Bidder shall be a "***Qualified Bidder***." The Debtors shall notify each Qualified Bidder that such party is a Qualified Bidder the day of the Bid Deadline.

(b)     If any Bid is determined by the Debtors not to be a Qualified Bid, the Debtors shall cause such Bidder to be refunded its Deposit and all accumulated interest thereon on or within five (5) business days after the Bid Deadline.

(c)     Between the time that the Debtors notify a Bidder that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate, or seek clarification of any Qualified Bid from a Qualified Bidder. Except as otherwise set forth in the Bidder's proposed Purchase and Sale Agreement(s), without the written consent of the Debtors, a Qualified Bidder may not modify, amend, or withdraw its Qualified Bid, except for proposed amendments to increase the consideration contemplated by, or otherwise improve the terms of, the Qualified Bid, during the period that such Qualified Bid remains binding as specified herein. Any Qualified Bid may be improved at the Auction as set forth herein, but any improved Qualified Bid must continue to comply with the requirements for Qualified Bids set forth herein.

**E.     Auction**

If one or more Qualified Bids are submitted, the Debtors will conduct the Auction to determine the Successful Bidder(s) with respect to the applicable Property. If no Qualified Bids other than the Stalking Horse Bid by Inland Bank are submitted, the Auction shall be canceled. If the Auction is canceled, the Stalking Horse Bidder shall be designated as the Successful Bidder.

No later than the commencement of the Auction, the Debtors will notify each Qualified Bidder of the highest or otherwise best Qualified Bid, as determined in the Debtors' reasonable business judgment (the "***Baseline Bid***"), and provide copies of the applicable Bid Documents supporting such Baseline Bid(s) to each Qualified Bidder. The determination of which Qualified Bid(s) constitutes the Baseline Bid(s) and which Qualified Bid(s) constitutes the Successful Bid(s) for the Assets shall take into account any factors the Debtors reasonably deem relevant to the value of the Qualified Bid(s) to the Debtors' estates, including, *inter alia*: (a) the number, type, and nature of any changes to the applicable Purchase and Sale Agreement requested by the Qualified Bidder, including the obligations to be assumed in the Bid; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the

Debtors' estates from the transaction contemplated by the Bid Documents; and (e) the tax consequences of such Qualified Bid (collectively, the "***Bid Assessment Criteria***").

The Auction shall take place at **10:00 a.m. Central Time on December 12, 2017**, at the offices of Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, or such later date and time as selected by the Debtors in consultation with Inland Bank and the Committee. When conducted, the Auction shall be conducted in a timely fashion according to the following procedures:

**(a)   The Debtors Shall Conduct the Auction.**

The Debtors and its professionals shall direct and preside over the Auction. At the start of the Auction, the Debtors shall describe the terms of the Baseline Bid(s) for the Assets. All incremental Bids made thereafter shall be Overbids (as defined herein) and shall be made and received on an open basis, and all material terms of each Overbid shall be fully disclosed to all other Qualified Bidders for the Assets. The Debtors shall maintain a written transcript of all Bids made and announced at the Auction, including the Baseline Bid(s), all Overbids, and the Successful Bid(s). Only Qualified Bidders and their legal and financial advisors shall be entitled to attend the Auction, and the Qualified Bidders shall appear in person and through duly-authorized representatives at the Auction.

**(b)   Terms of Overbids**

"***Overbid***" means any Bid made at the Auction by a Qualified Bidder subsequent to the Debtors' announcement of the Baseline Bid(s). Each Overbid must comply with the following conditions:

    **(i)   Minimum Overbid Increment.** All Overbids at the Auction shall initially be in minimum increments of $100,000.00 in cash. For the avoidance of doubt, any Bidder may submit an Overbid that is greater than $100,000.00 in cash.

    **(ii)   Stalking Horse Bidder Overbids.** The Stalking Horse Bidder may make Overbids, using the amount of the Break-Up Fee as a credit toward the amount of purchase price the Stalking Horse Bidder would pay.

    **(iii)   Overbid Alterations.** An Overbid may contain alterations, modifications, additions, or deletions of any terms of the Bid no less favorable to the Debtors' estates than any prior Qualified Bid or Overbid, as determined in the Debtors' reasonable business judgment, but shall otherwise comply with the terms of these Bidding Procedures.

    **(iv)   Announcing Overbids.** The Debtors shall announce at the Auction the material terms of each Overbid, the basis, whether subjective or objective, for calculating the total consideration offered in each such Overbid, and the resulting benefit to the Debtors' estates based on, *inter alia*, the Bid Assessment Criteria.

During the course of the Auction, the Debtors shall, after the submission of each Overbid, promptly inform each Qualified Bidder which Overbid reflects, in the Debtors' view, the highest or otherwise best Bid.

**(c)**  **Closing of the Auction**

(i)  The Auction shall continue until the Debtors determine in their reasonable business judgment, that they have obtained the highest or otherwise best Qualified Bid (such Qualified Bid, the "***Successful Bid***" and such Qualified Bidder, the "***Successful Bidder***"), at which point, the Auction will be closed.  The Auction shall not close unless and until all Qualified Bidders have been given a reasonable opportunity to submit an Overbid at the Auction to the then-existing Overbid(s).  Such acceptance by the Debtors of the Successful Bid is conditioned upon approval by the Court of the Successful Bid.

(ii)  For the avoidance of doubt, nothing in these Bidding Procedures shall prevent the Debtors from exercising their fiduciary duties under applicable law, including any Bids submitted prior to the close of the Sale Hearing.

(iii)  As soon as reasonably practicable after closing the Auction, the Debtors shall cause the Bid Documents for the Successful Bid(s) and Backup Bid(s) to be filed with the Court.

**(d)**  **No Collusion; Good-Faith, Bona Fide Offer**

Each Qualified Bidder participating at the Auction will be required to confirm on the record that: (i) it has not engaged in any collusion with respect to the bidding; and (ii) its Qualified Bid is a good faith bona fide offer and it intends to consummate the proposed transaction if selected as the Successful Bidder.

**F.**  **Backup Bidder**

(a)  Notwithstanding anything in these Bidding Procedures to the contrary, if an Auction is conducted, the Qualified Bidder(s) with the next-highest or otherwise second-best Qualified Bid at the Auction, as determined by the Debtors in the exercise of their reasonable business judgment, shall be required to serve as a backup bidder (the "***Backup Bidder***").

(b)  The identity of the Backup Bidder(s) and the amount and material terms of the Qualified Bid(s) of the Backup Bidder(s) shall be announced by the Debtors at the conclusion of the Auction at the same time the Debtors announce the identity of the Successful Bidder(s). The Backup Bidder(s) shall be required to keep its or their Qualified Bid(s) (or if the Backup Bidder(s) submitted one or more Overbids at the Auction, its final Overbid(s)) open and irrevocable until the closing of the transaction with the Successful Bidder(s).  The Backup Bidder's Deposit shall be held in escrow until the closing of the transaction with the Successful Bidder.

(c)  If a Successful Bidder fails to consummate an approved transaction contemplated

by its Successful Bid, the Debtors may select the applicable Backup Bidder as the Successful Bidder, and such Backup Bidder shall be deemed a Successful Bidder for all purposes. The Debtors will be authorized, but not required, to consummate all transactions contemplated by the Bid of such Backup Bidder without further order of the Court or notice to any party. In such case, the defaulting Successful Bidder's Deposit shall be forfeited to the Debtors, and the Debtors specifically reserve the right to seek all available remedies against the defaulting Successful Bidder, including with respect to specific performance.

**G.      Highest or Otherwise Best Bid**

When determining the highest or otherwise best Qualified Bid, as compared to other Qualified Bids, the Debtors may, in its sole discretion, consider the following factors in addition to any other factors that the Debtors deems appropriate: (a) the number, type, and nature of any changes to the applicable Purchase and Sale Agreement requested by the Qualified Bidder; (b) the amount and nature of the total consideration; (c) the likelihood of the Bidder's ability to close a transaction and the timing thereof; (d) the net economic effect of any changes to the value to be received by the Debtors' estates from the transaction contemplated by the Bid Documents; and (e) the tax consequences of such Qualified Bid.

**H.      Reservation of Rights**

The Debtors reserve their rights to modify these Bidding Procedures, in its reasonable business judgment, and with the consent of the Stalking Horse Bidder, in any manner that will best promote the goals of the bidding process, or impose, at or prior to the Auction, additional customary terms and conditions on the sale of the Assets, including, without limitation: (a) extending the deadlines set forth in these Bidding Procedures; (b) adjourning the Auction at the Auction and/or adjourning the Sale Hearing (as defined below) in open court without further notice; (c) adding procedural rules that are reasonably necessary or advisable under the circumstances for conducting the Auction; (d) canceling the Auction; (e) rejecting any or all Bids or Qualified Bids; and (f) adjusting the Minimum Overbid Increment, including by requesting that Qualified Bidders submit last or final bids on a "blind" basis.

**I.      Consent to Jurisdiction**

All Qualified Bidders at the Auction shall be deemed to have consented to the jurisdiction of the Court and waived any right to a jury trial in connection with any disputes relating to the Auction, the construction and enforcement of these Bidding Procedures, and/or the Bid Documents, as applicable.

**J.      Sale Hearing**

A hearing to consider approval of the Sale to the Successful Bidder(s) (the "*Sale Hearing*") is presently scheduled to take place on **December 14, 2017 at 10:00 a.m. Central Time**, or as soon thereafter as counsel may be heard, before the Honorable Deborah L. Thorne in Courtroom 613, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other judge who may be sitting in her place and stead. The Sale Hearing may be adjourned by the Court without further notice other than by announcement in

open court or on the Court's calendar.  At the Sale Hearing, the Debtors shall present the Successful Bid(s) to the Court for approval.

**K.      Return of Deposit**

The Successful Bidder's Deposit, if any, shall be applied to the purchase price of such transaction at closing.  The Deposits for each Qualified Bidder shall be held in one or more interest-bearing escrow accounts on terms acceptable to the Debtors in their sole discretion and shall be returned (other than with respect to any Successful Bidder or Backup Bidder) on or within five (5) business days after the Auction.  Upon the return of the Deposits, their respective owners shall receive any and all interest that will have accrued thereon.

If a Successful Bidder fails to consummate a proposed transaction because of a breach by such Successful Bidder, the Debtors will not have any obligation to return the Deposit deposited by such Successful Bidder, which may be retained by the Debtors as damages, without limiting any and all rights, remedies, and/or causes of action that may be available to the Debtors, and the Debtors shall be free to consummate the proposed transaction with the applicable Backup Bidder without the need for an additional hearing or order of the Court.

**L.      Modification of Bidding Procedures**

Except as provided by Section H hereof, these Bidding Procedures may not be modified except with the Debtors' and Inland Bank's express written consent.

## Exhibit 2 to the Bidding Procedures Order

**Sale Notice**

AM 67256487.4

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE HARRINGTON & KING PERFORATING CO., INC., *et al.*,[1] | Case No. 16-15650 (Jointly Administered) |
| Debtors. | Hon. Deborah L. Thorne |

**NOTICE OF THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS**

**PLEASE TAKE NOTICE** that on October 12, 2017, The Harrington & King Perforating Co., Inc. ("***H&K***") and Harrington & King South, Inc. ("***H&K South***"), as debtors and debtors in possession (collectively, the "***Debtors***") filed the *Motion for Entry of: (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially all of the Debtors' Assets, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts and Leases, (E) Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II) After Further Notice and a Hearing, an Order (A) Approving a Purchase and Sale Agreement, (B) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. ___] (the "***Sale Motion***") with the United States Bankruptcy Court for the Northern District of Illinois (the "***Court***") seeking, among other things, the entry of an order (the "***Sale Order***") authorizing and approving: (a) the sale of substantially all of the Debtors' assets (the "***Assets***") free and clear of all liens, claims, interest, encumbrances, and other interests, with such attaching with the same validity and priority to the sale proceeds; and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "***Contracts***") to the successful purchaser (the "***Purchaser***").[2]

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Assets consistent with the Bidding Procedures approved by the Court by entry of an order on December [___], 2017 [Docket No. ___] (the "***Bidding Procedures Order***"), a copy of which is attached hereto as **Exhibit A**. ***All interested bidders should carefully read the Bidding Procedures and the Bidding Procedures order.*** To the extent that there are any inconsistencies between this notice and the Bidding Procedures or the Bidding Procedures Order,

---

[1]  Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtors' federal tax identification numbers are: (a) The Harrington & King Perforating Co., Inc. (3190); and (b) Harrington & King South, Inc. (7859). The location of the Debtors' principal place of business and their address for notice purposes is 5655 West Fillmore Street, Chicago, Illinois 60644, Attn: Greg McCallister, Chief Restructuring Officer and Chief Operating Officer.

[2]  Capitalized terms used herein as defined terms and not otherwise defined shall have the meanings ascribed to them in the Sale Motion.

the Bidding Procedures or the Bidding Procedures Order, as applicable, shall govern in all respects.

PLEASE TAKE FURTHER NOTICE that if the Debtors receive qualified competing bids within the requirements and timeframe specified by the Bidding Procedures, the Debtors will conduct an auction (the "*Auction*") of the Assets at **10:00 a.m. Central Time on December 12, 2017** at the offices of Locke Lord, LLP, 111 S. Wacker Dr., Chicago, IL 60606 (or at such other location as the Debtors may hereafter designate on proper notice).

PLEASE TAKE FURTHER NOTICE that the Debtors will seek approval of the Sale at a hearing scheduled to commence at **December 14, 2017 at 10:00 a.m. Central Time** (the "*Sale Hearing*") before the Honorable Deborah L. Thorne in Courtroom 613, Everett McKinley Dirksen United States Courthouse, 219 South Dearborn Street, Chicago, Illinois, or any other judge who may be sitting in her place and stead.  The Sale Hearing may be adjourned by the Court without further notice other than by announcement in open court or on the Court's calendar.

PLEASE TAKE FURTHER NOTICE that, except as otherwise set forth in the Bidding Procedures Order with respect to objections to proposed cure amounts or the assumption and assignment of Contracts, objections, if any, to the relief requested in the Sale Motion ***must***: (a) be in writing, (b) conform with applicable provisions of the Bankruptcy Rules and the Local Rules of the Court, (c) state with particularity the legal and factual bases for the objection, (d) be filed with the Court and served on the following parties (the "*Notice Parties*") so as to be ***actually received*** no later than **December 13, 2017 at 5:00 p.m. Central Time** (the "*Sale Objection Deadline*"): (i) counsel for the Debtors, FactorLaw, 105 West Madison Street, Suite 1500, Chicago, Illinois 60602, Attn: William J. Factor and Sara E. Lorber (wfactor@wfactorlaw.com; slorber@wfactorlaw.com); (ii) counsel for Inland Bank, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, Attn: David J. Fischer and Phillip W. Nelson (david.fischer@lockelord.com; phillip.nelson@lockelord.com); counsel for the Creditors' Committee, Goldstein & McClintock LLLP, 111 West Washington Street, Suite 1221, Chicago, Illinois 60602, Attn: Thomas R. Fawkes and Brian J. Jackiw (tomf@goldmclaw.com; brianj@goldmclaw.com); and (iv) the office of the United States Trustee for the Northern District of Illinois, 219 S. Dearborn St., Chicago, Illinois 60604, Attn.: Patrick S. Layng and Denise DeLaurent (USTPRegion11.ES.ECF@usdoj.gov; denise.delaurent@usdoj.gov).  A party's failure to timely file or make an objection shall be deemed to constitute such party's consent to entry of the Sale Order and consummation of the Sale and all transactions related thereto.

### *CONSEQUENCES OF FAILING TO MAKE A TIMELY OBJECTION*

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY MAKE AN OBJECTION TO THE SALE ON OR BEFORE THE SALE OBJECTION DEADLINE IN ACCORDANCE WITH THIS NOTICE SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF THE PROPERTIES FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND OTHER INTERESTS.**

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

The proposed Sale Order provides that the Successful Bidder(s) arising from the Auction, if any, will have no responsibility for, and the Assets will be sold free and clear of, any successor liability, including the following: (a) any liability or other obligation of the Debtors' estates or related to the Assets other than as expressly set forth in the applicable Purchase and Sale Agreement; or (b) any claims against the Debtors, their estates, or any of their predecessors or affiliates.  Except as expressly provided in the Sale Order, the Successful Bidder(s) shall have no liability whatsoever with respect to the business, operations, or obligations of the Debtors, their estate, or that of any of their predecessors or affiliates based, in whole or part, directly or indirectly, on any theory of successor or vicarious liabilities of any kind or character, including, without limitation, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the closing of the Sale, now existing, or hereafter arising, whether asserted or unasserted, fixed or contingent, or liquidated or unliquidated with respect to the Debtors or any obligations of the Debtors arising prior to the closing of the Sale, including, without limitation, liabilities on account of any taxes arising, accruing or payable under, out of, in connection with, or in any way relating to the operation of any of the Assets prior to the closing of the Sale.

**PLEASE TAKE FURTHER NOTICE** that copies of the Sale Motion, and any exhibits thereto, the Bidding Procedures Order, the Bidding Procedures, the Purchase and Sale Agreement, and the proposed Sale Order are available: (a) from the Debtors' counsel, FactorLaw, 105 West Madison Street, Suite 1500, Chicago, Illinois 60602, Attn: William J. Factor and Sara E. Lorber (wfactor@wfactorlaw.com; slorber@wfactorlaw.com); or (b) via the Court's PACER system by visiting http://www.ilnb.uscourts.gov.

Dated: October [____], 2017

Respectfully submitted,

**THE HARRINGTON & KING
PERFORATING CO., INC. and
HARRINGTON & KING SOUTH, INC.**

By: _____
One of Its Attorneys

William J. Factor (6205675)
Sara E. Lorber (6229740)
**FACTORLAW**
105 West Madison Street, Suite 1500
Chicago, Illinois 60602
Telephone: 312-878-6146
Facsimile: 847-574-8233
Email:  wfactor@wfactorlaw.com
        slorber@wfactorlaw.com
*Counsel for the Debtors*

**Exhibit 3 to the Bidding Procedures Order**

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE HARRINGTON & KING PERFORATING CO., INC., *et al.*,[1] | Case No. 16-15650 (Jointly Administered) |
| Debtors. | Hon. Deborah L. Thorne |

## NOTICE OF ASSUMPTION AND ASSIGNMENT
## OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN
## CONNECTION WITH THE SALE OF THE DEBTORS' PROPERTY

**PLEASE TAKE NOTICE** that on October 12, 2017, The Harrington & King Perforating Co., Inc. ("*H&K*") and Harrington & King South, Inc. ("*H&K South*"), as debtors and debtors in possession (collectively, the "*Debtors*") filed the *Motion for Entry of: (I) an Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Substantially all of the Debtors' Assets, (C) Scheduling an Auction and a Sale Hearing, (D) Approving Procedures for the Assumption and Assignment of Contracts and Leases, (E) Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II) After Further Notice and a Hearing, an Order (A) Approving a Purchase and Sale Agreement, (B) Authorizing the Sale of Substantially all of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (C) Authorizing the Assumption and Assignment of Contracts and Leases, and (D) Granting Related Relief* [Docket No. ___] (the "*Sale Motion*") with the United States Bankruptcy Court for the Northern District of Illinois (the "*Court*") seeking, among other things, the entry of an order (the "*Sale Order*") authorizing and approving: (a) the sale of substantially all of the Debtors' assets (the "*Assets*") free and clear of all liens, claims, interest, encumbrances, and other interests, with such attaching with the same validity and priority to the sale proceeds; and (b) procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "*Contracts*") to the successful bidder (the "*Successful Bidder*").[2]

**PLEASE TAKE FURTHER NOTICE** that, on December [__], 2017, the Court entered an order [Docket No. ___] (the "*Bidding Procedures Order*") approving procedures for the assumption and assignment of the Contracts the (the "*Assignment Procedures*").

---

[1]   Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtors' federal tax identification numbers are: (a) The Harrington & King Perforating Co., Inc. (3190); and (b) Harrington & King South, Inc. (7859). The location of the Debtors' principal place of business and their address for notice purposes is 5655 West Fillmore Street, Chicago, Illinois 60644, Attn: Greg McCallister, Chief Restructuring Officer and Chief Operating Officer.

[2]   Capitalized terms used herein as defined terms and not otherwise defined shall have the meanings ascribed to them in the Sale Motion.

**PLEASE TAKE FURTHER NOTICE** that on December [____], 2017, the Court entered an order [Docket No. ____] (attached hereto as **Exhibit A**, the "*Sale Order*") approving the sale of Assets to the Successful Bidder and authorizing assignment of the Assigned Contracts (as defined below) to the Successful Bidder, subject to the right of contract counterparties to object to the assignment, as described in the Sale Order.

**PARTIES LISTED ON EXHIBIT B HERETO ARE RECEIVING THIS NOTICE BECAUSE THE DEBTORS HAVE IDENTIFIED THEM AS A COUNTERPARTY TO A CONTRACT TO BE ASSIGNED TO THE SUCCESSFUL BIDDER PURSUANT TO THE SALE.** Pursuant to the Assignment Procedures, and by this written notice, the Debtors hereby notify you that they have determined, in the exercise of their business judgment, that the Contracts set forth on **Exhibit B** hereto (collectively, the "*Assigned Contracts*") shall be assumed and assigned to the Successful Bidder upon the closing of the Sale, subject to the payment of the cure amounts set forth on **Exhibit B** hereto, or such other cure amounts as are agreed by the parties (the "*Cure Amounts*").  **The presence of a contract on Exhibit B does not constitute an admission by the Debtors that such contract is an executory contract or an unexpired lease, and the Debtors reserve all rights to withdraw any proposed assumption or reject any contract at any time before such contract is assumed and assigned pursuant to an order of the Court.  Please also note that certain contracts may have been omitted from the public version of Exhibit B due to the confidential and proprietary nature thereof.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors believe that the Debtors' or the Successful Bidders' agreement to pay cure amounts related to the Assigned Contracts, as set forth in their asset purchase agreement (the "*Purchase and Sale Agreement*"), and the Successful Bidder's commitment to pay obligations as they come due, demonstrate adequate assurance of future performance and satisfy the requirements of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

### Obtaining Additional Information

Copies of the Sale Motion, and any exhibits thereto, the Bidding Procedures Order, the Bidding Procedures, the Purchase and Sale Agreement, and the proposed Sale Order are available: (a) from the Debtors' counsel, FactorLaw, 105 West Madison Street, Suite 1500, Chicago, Illinois 60602, Attn: William J. Factor and Sara E. Lorber (wfactor@wfactorlaw.com; slorber@wfactorlaw.com); or (b) via the Court's PACER system by visiting http://ecf.ilnb.uscourts.gov.

### Filing Assignment Objections

Pursuant to the Assignment Procedures, objections to the proposed assumption and assignment of an Assigned Contract, including any objection relating to the Cure Amount and/or adequate assurance of future performance (collectively, an "*Assignment Objection*") must: (a) be in writing; (b) state with specificity the nature of such objection, including the alleged Cure Amount, if necessary, as well as the applicable and appropriate documentation in support of such alleged Cure Amount; (c) comply with the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Northern District of Illinois; and (d) be filed with the Court and served

on the following parties so as to be ***actually received*** no later than **December [__], 2017 at 5:00 p.m. Central Time**: (i) counsel for the Debtors, FactorLaw, 105 West Madison Street, Suite 1500, Chicago, Illinois 60602, Attn: William J. Factor and Sara E. Lorber (wfactor@wfactorlaw.com; slorber@wfactorlaw.com); (ii) counsel for Inland Bank, Locke Lord LLP, 111 South Wacker Drive, Chicago, Illinois 60606, Attn: David J. Fischer and Phillip W. Nelson (david.fischer@lockelord.com; phillip.nelson@locklord.com); counsel for the Official Committee of Unsecured Creditors, Goldstein & McClintock LLLP, 111 West Washington Street, Suite 1221, Chicago, Illinois 60602, Attn: Thomas R. Fawkes and Brian J. Jackiw (tomf@goldmclaw.com; brianj@goldmclaw.com); and (iv) the office of the United States Trustee for the Northern District of Illinois, 219 S. Dearborn St., Chicago, Illinois 60604, Attn.: Patrick S. Layng and Denise DeLaurent (USTPRegion11.ES.ECF@usdoj.gov; denise.delaurent@usdoj.gov).

The Court has scheduled a status hearing for **January [___], 2017 at 10:00 a.m. Central Time** (the "***Status Hearing***"), to determine if there are any unresolved Assignment Objections. If any timely filed Assignment Objection cannot be resolved by the Successful Bidder and the objecting party or by the Court as the Status Hearing, the Court shall schedule a hearing to resolve such Assignment Objection of such designated Contract. If the Court declines to overrule the objection and approve the assignment, the designated Contract may be rejected by the Debtors at their option. Upon entry of an order by the Court resolving such Assignment Objection, the assignment, if approved by the Court, shall be deemed effective as of the date of the closing of the sale, which is scheduled to occur no later than [_____].

## CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION

**ANY COUNTERPARTY TO AN ASSIGNED CONTRACT WHO FAILS TO TIMELY FILE AND SERVE AN ASSIGNMENT OBJECTION TO THE PROPOSED ASSUMPTION AND ASSIGNMENT OF AN ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON <u>EXHIBIT B</u> IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER AND THE ASSIGNMENT PROCEDURES SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND ASSIGNMENT OF THE ASSIGNED CONTRACT AND/OR THE CURE AMOUNT SET FORTH ON <u>EXHIBIT B</u>, INCLUDING ASSERTING ADDITIONAL CURE AMOUNTS WITH RESPECT TO THE ASSIGNED CONTRACT RELATING TO ANY PERIOD PRIOR TO THE TIME OF ASSUMPTION AND ASSIGNMENT.**

Dated: October [＿＿], 2017

Respectfully submitted,

**THE HARRINGTON & KING
PERFORATING CO., INC. and
HARRINGTON & KING SOUTH, INC.**

By: _____
     One of Its Attorneys

William J. Factor (6205675)
Sara E. Lorber (6229740)
**FACTORLAW**
105 West Madison Street, Suite 1500
Chicago, Illinois 60602
Telephone: 312-878-6146
Facsimile: 847-574-8233
Email:  wfactor@wfactorlaw.com
        slorber@wfactorlaw.com
*Counsel for the Debtors*

**<u>Exhibit B to the Motion</u>**

**Sale Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In re: | Chapter 11 Reorganization |
| THE HARRINGTON & KING PERFORATING CO., INC., *et al.*,[11] | Case No. 16-15650 (Jointly Administered) |
| Debtors. | Hon. Deborah L. Thorne |

**ORDER (A) APPROVING PURCHASE AND SALE AGREEMENT, (B) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, (C) AUTHORIZING THE ASSUMPTION AND ASSIGNMENT OF CONTRACTS AND LEASES, AND (D) GRANTING RELATED RELIEF**

Upon the motion (the "***Motion***") of The Harrington & King Perforating Co., Inc. ("***H&K***") and Harrington & King South, Inc. ("***H&K South***"), as debtors and debtors in possession (collectively, the "***Debtors***") for, among other things, entry of (a) an order (this "***Bidding Procedures Order***") (i) authorizing and approving the bidding procedures attached to the Bidding Procedures Order as **Exhibit 1** (the "***Bidding Procedures***") in connection with the sale of substantially all of the Debtors' assets (the "**Assets**") in one or more sales, (ii) approving the form and manner of notice attached hereto as **Exhibit 2** (the "***Sale Notice***") of an auction (the "***Auction***") and sale hearing (the "***Sale Hearing***") with respect to the sale of the Assets free and clear of liens, claims, encumbrances, and other interests (the "***Sale***"), (iii) scheduling the Auction and Sale Hearing, (iv) approving procedures for the assumption and assignment (as set forth herein, the "***Assumption Procedures***") of certain executory contracts and unexpired leases in connection with the Sale (collectively, the "***Contracts***") and (v) authorizing the Debtors,

---

[11] Pursuant to 11 U.S.C. § 342(c)(1), the last four digits of the Debtors' federal tax identification numbers are: (a) The Harrington & King Perforating Co., Inc. (3190); and (b) Harrington & King South, Inc. (7859). The location of the Debtors' principal place of business and their address for notice purposes is 5655 West Fillmore Street, Chicago, Illinois 60644, Attn: Greg McCallister, Chief Restructuring Officer and Chief Operating Officer.

in the exercise of their reasonable business judgment and after consultation with Inland Bank and

Trust ("***Inland Bank***") and the Official Committee of Unsecured Creditors (the "***Committee***")

(A) to enter into a stalking-horse agreement (the "***Stalking Horse Agreement***") with a bidder if

the Debtors, in consultation with Inland Bank and the Committee, believe that such an agreement

will further the purpose of the Auction and to offer a stalking-horse bidder (the "***Stalking Horse***

***Bidder***") any or all of the following as part of a Stalking Horse Agreement: (1) a break-up fee

(the "***Break-Up Fee***") in an amount to be determined by the Debtors, not to exceed 3 percent of

the total purchase price offered by the Stalking Horse Bidder in the Stalking Horse Agreement

and (2) initial overbid protection in the amount of $100,000 (the "***Initial Overbid***" and, together

with the Break-Up Fee, the "***Bid Protections***"); and (b) at the conclusion of the Sale Hearing, an

order substantially in the form attached to the Motion as **Exhibit B** (the "***Sale Order***")

(i) authorizing and approving the Sale of the Assets to the Successful Bidder (as defined in

the Bidding Procedures) on the terms substantially set forth in the Successful Bid,

(ii) authorizing and approving the Sale of all or substantially all of the Assets free and clear

of liens, claims, encumbrances, and other interests in the Assets, all in accordance with the

Successful Bid, (iii) authorizing the assumption and assignment of the Contracts, and

(iv) granting any related relief; the Court having conducted a preliminary hearing on the Motion

on October [    ], 2017 (the "***Initial Hearing***") and thereafter entered the Bidding Procedures

Order [Docket No.     ]; the Court having conducted the Sale Hearing on December [    ], 2017,

at which hearing the Debtors requested that the Court enter this Sale Order approving the

Purchase and Sale Agreement attached hereto as **Exhibit 1** (the "***Agreement***") and designating

the Successful Bidder as the purchaser of the Assets (the "***Purchaser***"); now, therefore:

**IT IS HEREBY FOUND AND DETERMINED THAT:**

<u>R</u>ECORD <u>B</u>EFORE THE <u>C</u>OURT ON THE <u>S</u>ALE <u>M</u>OTION

A.      The Debtors and the Purchaser have filed and submitted the following documents in support of the Sale Motion and have moved for their admission into the record, without objection thereto being interposed.   Accordingly, the following are hereby admitted into the record before the Court:

(a)      the declarations filed in support of the Motion and the Sale [Docket Nos. ____];

(b)      *Certificate of Service with Respect to (a) Sale Notice, (b) Bidding Procedures Order, and (c) Bidding Procedures* [Docket No. ___];

(c)      the *Notice of Motion* and *Certificate of Service* affixed to the Motion [Docket No. ___]; and

(d)      the *Certification of Cancellation of Auction* and transcript attached thereto [Docket No. ___].

The following findings of the Court are based upon the Court's review of the Sale Motion, the representations made by counsel for the parties in open Court at the Initial Hearing and the Sale Hearing, and the record established by the forgoing documents.

<u>J</u>URISDICTION, <u>F</u>INAL <u>O</u>RDER <u>A</u>ND <u>S</u>TATUTORY <u>P</u>REDICATES

B.      This Court has jurisdiction over the Motion, the transactions contemplated by the Agreement and all other ancillary documents and agreements related thereto pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a).   This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (N) and (O).   Venue of these cases and the Sale Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

C.      This Sale Order constitutes a final and appealable order within the meaning of 28 U.S.C. § 158(a).   Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, and expressly directs entry of judgment as set forth herein.

D.      The statutory predicates for the relief sought in the Sale Motion are Sections 105(a), 363(b), (f) and (m) and 365(a), (b) and (f) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006.

### SOUND BUSINESS PURPOSE

E.      The Debtors seek to convey the Assets to the Purchaser by means of the Sale.

F.      The Debtors have demonstrated, and the Agreement reflects, both (1) good, sufficient, and sound business purposes and justifications for the Sale, and (2) compelling circumstances for the Sale outside of the ordinary course of the Debtors' business pursuant to section 363(b) of the Bankruptcy Code prior to, and outside of, a plan of reorganization inasmuch as the value to be obtained as a result of the Sale will result in satisfaction of Debtors' secured indebtedness.

G.      The consummation of the Sale pursuant to the Agreement neither impermissibly restructures the rights of the Debtors' creditors nor impermissibly dictates the terms of a plan of reorganization of the Debtors.  The Sale does not constitute a *sub rosa* or *de facto* plan of reorganization.

H.      The Agreement was not entered into, and neither the Debtors nor the Purchaser have entered into the Agreement or propose to consummate the Sale, for the purpose of hindering, delaying or defrauding the Debtors' creditors.  Neither the Debtors nor the Purchaser have entered into the Agreement or propose consummate the Sale fraudulently for the purpose of statutory or common law fraudulent conveyance or fraudulent transfer claims, whether under the Bankruptcy Code or under the laws of the United States, any state, territory or possession thereof, or any other applicable jurisdiction with laws substantially similar to the foregoing.

## HIGHEST AND BEST OFFER

I.      On October [19], 2017, this Court entered the Bidding Procedures Order approving the Bidding Procedures for the Assets.  The Bidding Procedures provided a full, fair and reasonable opportunity for any entity to make an offer to purchase the Assets.  The Debtors and the Purchaser complied with the Bidding Procedures Order in all respects.

J.      As demonstrated by the testimony and other evidence proffered or adduced at the Sale Hearing, (1) the Debtors have actively and adequately marketed the Assets for sale both prepetition and postpetition; (2) the purchase price contained in the Agreement constitutes the highest and otherwise best offer for the Assets and provides fair and reasonable consideration for the Assets; (3) the Sale under section 363 of the Bankruptcy Code is desirable and preferable to a sale under a plan of reorganization because, among other reasons, there is no assurance that the Purchaser would be able or willing to await the outcome of a plan confirmation process and hearing; (4) no other party has offered to purchase the Assets for greater economic value to the Debtors or their estates; and (5) the Agreement and the consideration to be paid by the Purchaser under the Agreement constitute reasonably equivalent value and fair consideration.  The Debtors' determination that the Agreement constitutes the highest and best offer for the Assets constitutes a valid and sound exercise of the Debtors' business judgment.

## BEST INTERESTS OF CREDITORS

K.      Approval of the Agreement and the consummation of the Sale to the Purchaser at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest in these chapter 11 cases.

## GOOD FAITH

L.      The Purchaser is not an "insider" of the Debtors, as that term is defined by Section 101(31) of the Bankruptcy Code.

{00101414}

6

AM 67256487.4

M.    The Agreement and each of the transactions contemplated therein were negotiated, proposed and entered into by the Debtors and the Purchaser in good faith, without collusion and from arm's-length bargaining positions.  The Purchaser has proceeded in good faith in all respects in connection with these bankruptcy cases, is a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to all the protections afforded thereby.  Neither the Debtors nor the Purchaser have engaged in any conduct that would cause or permit the Agreement to be avoided, that would tend to hinder or delay creditors, or that would impose costs and damages pursuant to section 363(n) of the Bankruptcy Code.

### NOTICE OF THE SALE MOTION, THE AUCTION AND THE ASSUMPTION NOTICES

N.    As evidenced by the certificates of service filed with the Court, (1) proper, timely, adequate and sufficient notice of the Sale Motion, the Sale Hearing and the Assumption Notices has been provided by the Debtors; (2) such notice was good, sufficient and appropriate under the particular circumstances; and (3) no other or further notice of the Sale Motion, the proposed Sale, the Bidding Procedures, the Assumption Notices or the Sale Hearing is necessary or shall be required.  A reasonable opportunity to object or be heard with respect to the Sale Motion and the relief requested therein has been afforded to all interested persons and entities, including, but not limited to:

(a)    counsel to Inland Bank, and the Debtors' secured prepetition and postpetition lenders;

(b)    counsel to the Committee;

(c)    any party who, in the past year, expressed in writing to the Debtors an interest in the Assets;

(d)    non-debtor parties to the Assumed Contracts;

(e)      all parties who are known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in the Assets;

(f)      the Internal Revenue Service;

(g)      all applicable states attorneys general;

(h)      the applicable state and local taxing authorities;

(i)      the Office of the United States Trustee for the Northern District of Illinois;

(j)      the Environmental Protection Agency;

(k)      the United States Attorney;

(l)      all attorneys who have filed notices of appearance in this chapter 11 case;

(m)      all entities that have requested notice in this chapter 11 case; and

(n)      all other parties identified on the creditor matrix in these cases.

O.      In accordance with the provisions of the Bidding Procedures Order, the Debtors have served Assumption Notices upon each non-debtor counterparty to the Assumed Contracts. The service of such notice was good, sufficient and appropriate under the circumstances and no further notice need be given with respect to the Cure Costs for the Assumed Contracts and the assumption and assignment of the Assumed Contracts.  All non-debtor parties to the Assumed Contracts have an opportunity to object to both the Cure Costs listed in the Assumption Sale Notice and the assumption and assignment of the Assumed Contracts (including objections related to adequate assurance of future performance and objections based on whether applicable law excuses the non-debtor counterparty to each Assumed Contract from accepting performance by, or rendering performance to, the Purchaser for purposes of section 365(c)(1) of the Bankruptcy Code).

## SECTION 363(F) REQUIREMENTS MET FOR FREE AND CLEAR SALES

P.      The Debtors may sell the Assets free and clear of all liens, claims, interests and Encumbrances (as defined below) of any kind or nature whatsoever (except for Permitted

Exceptions), because, in each case, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code have been satisfied.  "*Encumbrance*" and "*Encumbrances*" mean: (1) any claim (as that term is defined in section 101(5) of the Bankruptcy Code), any interest, a notice of *lis pendens*, any cause of action, community property interest, condition, equitable interest, lien (statutory or otherwise), license, option, mortgage, pledge, encumbrance, security interest, restriction under any applicable bulk sales law, right of first refusal or restriction of any kind, including any restriction on use, voting, transfer, receipt of income or exercise of any other attribute of ownership, and including tax, charges of any kind (including, without limitation, any conditional sale or other title retention agreement or lease in the nature thereof), any sale of receivables with recourse against the Purchaser, any filing or agreement to file a financing statement as debtor under the Uniform Commercial Code or any similar statute (other than the permitted exceptions identified in the Agreement); and also including (2) any easement, covenant, right of way, or similar restrictions, other than easements and rights of way recorded with the county recorder of deeds where the Debtors' assets are located, which are in force and effect, or shown on the title policy to be issued to the Purchaser to which the Purchaser does not object in accordance with the Agreement; and also including, (3) all of the Debtors' loan and financing agreements (and related mortgages and other security interests, and related and ancillary agreements) with Inland Bank and any other secured lender respectively, and any and all claims, duties, liabilities, obligations, rights, and requirements arising under and relating to those loan and financing agreements (and related mortgages and other security interests, and related and ancillary agreements).

  Q. The assumption and assignment of each of the Assumed Contracts is also free and clear of all Encumbrances other than the payment of Cure Costs or as provided in this Sale

Order.  Those holders of Encumbrances who did not object, or who withdrew their objections, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.

R.     Inland Bank and Southern Heritage Bank have consented to the sale under section 363(f)(2) of the Bankruptcy Code.

S.     The Debtors are the sole and lawful owner of the Assets and no other person has any ownership right, title, or interest therein.

T.     All holders of Encumbrances are adequately protected, and the Sale thus satisfies section 363(e) of the Bankruptcy Code, by having their Encumbrances, if any, attach to the proceeds of the Sale ultimately attributable to the property against which they have an Encumbrances, in the same order of priority and with the same validity, force and effect that such Encumbrances had prior to the Sale, subject to any rights, claims and defenses of the Debtors, including, without limitation, the respective Encumbrances of Inland Bank and Southern Heritage Bank.

U.     The Purchaser would not have entered into the Agreement and would not consummate the transactions contemplated thereby, thus adversely affecting the Debtors, their estates and their creditors, if the sale of the Assets were not free and clear of all Encumbrances other than the Permitted Exceptions, or if the Purchaser would, or in the future could, be liable for any such Encumbrances.

V.     Except for the Assumed Liabilities or as provided in this Sale Order, the Sale shall not impose or result in the imposition of any liability or responsibility of the Purchaser or its affiliates, successors or assigns or any of their assets (including the Assets), and the transfer of the Assets to the Purchaser does not and will not subject the Purchaser or its affiliates, successors

or assigns or any of their assets (including the Assets), to any liability for any Encumbrances including, without limitation, successor liability or any products liability.

### ASSUMPTION AND ASSIGNMENT OF THE ASSUMED CONTRACTS

W.      The assumption and assignment of the Assumed Contracts are integral to the Agreement, are in the best interests of the Debtors and their estates, and represent the reasonable exercise of the Debtors' sound business judgment.

X.      With respect to the assumption and assignment of each of the Assumed Contracts, absent a sustained objection from a counter-party to an Assumed Contract interposed in accordance with the procedures set forth below, the Debtors have met all requirements of section 365(b) of the Bankruptcy Code.  Further, absent such an objection, the Purchaser has provided all necessary adequate assurance of future performance under the Assumed Contracts in satisfaction of sections 365(b) and 365(f) of the Bankruptcy Code.  Accordingly, absent a sustained objection from a counter-party to an Assumed Contract interposed in accordance with the procedures set forth below, the Assumed Contracts can be assumed by the Debtors and assigned to the Purchaser, as provided for in the Bidding Procedures Order, the Assumption Notices, the Sale Motion and the Agreement.

### VALIDITY OF THE TRANSFER

Y.      No contract counterparty for any of the Assumed Contracts shall have any claim against the Purchaser arising from or related to the Assumed Contract, existing as of the Closing, whether known or unknown.

Z.      As of the closing of the Sale (the "**Closing**"), the transfer of the Assets to the Purchaser will be a full and final legal, valid, and effective transfer of the Assets, and will vest the Purchaser with all right, title and interest in and to the Assets, free and clear of (1) all Encumbrances other than the Permitted Exceptions (as defined in the Agreement), and (2) all

{00101414}

AM 67256487.4

debts arising under or out of, in connection with, or in any way relating to, any acts of the Debtors, claims (as that term is defined in section 101(5) of the Bankruptcy Code), rights or causes of action (whether in law or in equity, including, but not limited to, any rights or causes of action based on theories of transferee or successor liability under any law, statute, rule or regulation of the United States or any state), obligations, demands, guaranties, rights, contractual commitments, restrictions, interests and matters of any kind or nature whatsoever, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity or otherwise.

AA.    The Debtors (1) have full corporate power and authority to execute the Agreement and all other documents contemplated thereby, and the Sale has been duly and validly authorized by all necessary corporate action of the Debtors, (2) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Agreement, (3) have taken all actions necessary to authorize and approve the Agreement and the consummation by the Debtors of the transactions contemplated thereby, and (4) no consents or approvals, other than those expressly provided for in the Agreement, are required for the Debtors to consummate such transactions.

BB.    The relief requested in the Sale Motion is in the best interests of the Debtors in these chapter 11 cases, their estates and creditors, and all other parties in interest.

Upon the complete record of the Sale Hearing and these chapter 11 cases, and after due deliberation and good cause appearing therefore.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

### GENERAL PROVISIONS

1.     The Sale Motion is granted in full and the Sale is approved as set forth in this Sale Order.

2.     The findings of fact set forth above and conclusions of law stated herein shall constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact later shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

3.     All objections to the Sale Motion and all reservations of rights included therein have been withdrawn or overruled on the merits.

### APPROVAL OF THE AGREEMENT

4.     The Agreement, all transactions contemplated therein and all of the terms and conditions thereof are hereby approved.

5.     Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtors are authorized and directed to perform their obligations under and comply with the terms of the Agreement and consummate the Sale, pursuant to and in accordance with the terms and conditions of the Agreement and this Sale Order.

6.     Debtors, and their officers, employees and agents, are authorized and directed to execute and deliver, and empowered to perform under, consummate and implement, the Agreement, in substantially the same form attached hereto as **Exhibit 1**, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Agreement and to take all further actions as may be (a) reasonably requested by

{00101414}

13

the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession, the Assets, (b) necessary or appropriate to the performance of the obligations contemplated by the Agreement, and (c) as may be reasonably requested by the Purchaser to implement the Agreement and consummate the Sale in accordance with the terms thereof, all without further order of the Court.

7.      This Sale Order and the Agreement shall be binding in all respects upon the Purchaser, the Debtors, any trustees appointed in the Debtors' bankruptcy cases (whether under chapter 7 or chapter 11 of the Bankruptcy Code), all creditors (both known and unknown) of the Debtors, and their creditors, all interested parties, and their successors and assigns including, but not limited to, any person or entity asserting an Encumbrance, and any non-debtor counterparty to one of the Assumed Contracts.

8.      Nothing contained in any chapter 11 plan confirmed in these bankruptcy cases, or any order confirming any such chapter 11 plan shall conflict with or derogate from the provisions of the Agreement and this Sale Order, and to the extent of any conflict or derogation between the Agreement and this Sale Order and any such future plans or orders, the terms of the Agreement and this Sale Order shall control.

### TRANSFER OF DEBTORS' ASSETS

9.      Pursuant to sections 105(a), 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized and directed to transfer the Assets in accordance with the terms of the Agreement.  The Assets shall be transferred to the Purchaser, and upon consummation of the Sale, such transfer shall (a) be valid, legal, binding and effective; (b) vest the Purchaser with all right, title and interest of the Debtors in the Assets; and (c) be free and clear of all Encumbrances except for Permitted Exceptions with all Encumbrances to attach to the proceeds of the Sale, in the order of their priority and with the same validity, force and effect which they now have

against the Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

10.     Except as otherwise provided in the Agreement, all persons and entities (and their respective successors and assigns) including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade and other creditors, holding Encumbrances (whether legal or equitable, secured or unsecured, matured or unmatured, known or unknown, contingent or non-contingent, senior or subordinated) except for Permitted Exceptions, arising under or out of, in connection with, or in any way relating to, the Debtors, the Assets, or the transfer of the Assets to the Purchaser, are hereby forever barred, estopped and permanently enjoined from asserting such Encumbrances against the Purchaser, its successors or assigns, its property or the Assets.  No such persons or entities shall assert against the Purchaser or their successors in interest any liability, debt, claim or obligation arising from, related to or in connection with the ownership or operation of the Assets prior to the Closing, except for Assumed Liabilities and Permitted Exceptions.

11.     This Sale Order (a) shall be effective as a determination that, as of Closing, all Encumbrances other than Assumed Liabilities and Permitted Exceptions relating to the Assets have been unconditionally released, discharged and terminated, and that the conveyances described herein have been effected, and (b) is and shall be binding upon and govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or

{00101414}

15

AM 67256487.4

who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby directed to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Agreement.

12.     On or before the Closing Date, all parties holding or claiming Encumbrances against the Assets, of any kind, are authorized and directed to execute such documents and take all other actions as may be necessary to release any Encumbrances, of any kind, against the Assets, as such Encumbrances may have been recorded or may otherwise exist, with such Encumbrances attaching to the proceeds of the Sale, subject to any rights, claims and defenses of the Debtors.

13.     If any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens* or other documents or agreements evidencing Encumbrances against or in the Debtors or the Assets shall not have delivered to the Debtors prior to the Closing of the Sale, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of all interests which the person or entity has with respect to the Debtors or the Assets or otherwise, then only with regard to the Assets that are Purchased Assets pursuant to the Agreement and this Sale Order (a) the Debtors and the Purchaser are hereby authorized and directed to execute and file such statements, instruments, releases and other documents on behalf of the person or entity with respect to the Assets, and (b) the Purchaser is hereby authorized to file, register or otherwise record a certified copy of this Sale Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Encumbrances against the Assets other than the Permitted Exceptions.  This

Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state or local government agency, department or office.

14.    Debtors and the Purchaser are hereby authorized to execute and deliver such other documents, statements, instruments and notices which may be necessary or desirable to fully consummate the Agreement and the Sale.

15.    All persons or entities in possession of some or all of the Assets are directed to surrender possession of such Property to the Purchaser or its designee at the time of Closing of the Sale.

16.    Following the Closing of the Sale, no holder of any Encumbrance shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to any such Encumbrance, or based on any actions the Debtors may take in these chapter 11 cases.

17.    All persons and entities are prohibited and enjoined from taking any action to adversely affect or interfere with the ability of the Debtors to transfer the Assets to the Purchaser in accordance with the Agreement and this Sale Order.

18.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred and conveyed to the Purchaser on account of the filing or pendency of these chapter 11 cases or the consummation of the Sale.

### ASSUMPTION AND ASSIGNMENT OF ASSUMED CONTRACTS

19.    Pursuant to sections 105(a) and 365 of the Bankruptcy Code, the Debtors' assumption and assignment to the Purchaser of the Assumed Contracts listed on **Exhibit 2**, is hereby approved, and all requirements of section 365 of the Bankruptcy Code are hereby deemed satisfied, absent a sustained objection from a counterparty to an Assumed Contract interposed in accordance with the procedures set forth below.

{00101414}

17

AM 67256487.4

20.     Any counter-party to the Assumed Contracts objecting to the Cure Amount or to the assignment of the Assumed Contract to the Purchaser (an "***Assignment Objection***") shall file an objection with the Court no later than January [___], 2017 (the "***Assumption Objection Deadline***").

21.     The Court shall conduct a status hearing on January [___], 2017 at 10:00 a.m. Central Time to determine the status of any Assignment Objection and what, if any, further steps should be taken to resolve the objection.

22.     The Debtors shall serve all counter-parties to the Assumed Contracts with a copy of this Order no less than seven (7) days before the Assumption Objection Deadline.

23.     Absent a timely filed Assignment Objection, the Debtors are hereby authorized in accordance with sections 105(a) and 365 of the Bankruptcy Code to assume and assign the Assumed Contracts to the Purchaser free and clear of all Encumbrances, and to execute and deliver to the Purchaser such documents or other instruments as may be necessary to assign and transfer the Assumed Contracts to the Purchaser.

24.     Absent a timely filed Assignment Objection, the Assumed Contracts shall be assigned to, and remain in full force and effect for the benefit of, the Purchaser in accordance with their respective terms, notwithstanding any provision in any such Assumed Contract (including those of the type described in Sections 365(e)(1) and (f) of the Bankruptcy Code) that prohibits, restricts or conditions such assignment or transfer.  There shall be no accelerations, assignment fees, increases or any other fees charged to the Purchaser or the Debtors as a result of the assumption or assignment of the Assumed Contracts.  No Assumed Contract may be terminated, or the rights of any party modified in any respect, including pursuant to any "change

of control" clause, by any other party thereto as a result of the transactions contemplated by the Agreement.

25.     Absent a timely filed Assignment Objection, the Cure Costs under the Assumed Contracts arising or accruing prior to the date of this Sale Order are shown on **Exhibit 2**.  On or before the Closing (as defined in the Agreement), the Debtors are authorized to use the proceeds of the Sale, and is directed to, and therefore shall, pay all Cure Costs in accordance with the terms of this Sale Order and the Agreement, and section 365 of the Bankruptcy Code.

26.     Payment of the Cure Costs shall be a full and final satisfaction of any and all defaults by the Debtors under the Assumed Contracts, whether monetary or non-monetary or known or unknown.  Each non-debtor party to an Assumed Contract hereby is forever barred, estopped and permanently enjoined from asserting against the Debtors or the Purchaser, their successors or assigns or the property of any of them, any default based on all known and unknown facts and circumstances existing as of the date of the Sale Hearing regardless of whether such default was raised or asserted prior to or at the Sale Hearing.  Notwithstanding the foregoing and for the avoidance of doubt, all of the Debtors' rights to assert, and interests in, all credits, chargebacks, setoffs, recoupments, rebates and other claims under and/or relating to the Assumed Contracts are purchased by and assigned to the Purchaser, and are preserved for the Purchaser's benefit.

27.     The failure of the Debtors or the Purchaser to enforce at any time one or more terms or conditions of any Assumed Contract shall not be a waiver of such terms or conditions, or of the Debtors' and the Purchaser's rights to enforce every term and condition of the Assumed Contracts.

{00101414}

AM 67256487.4

19

28.     Absent a timely filed Assignment Objection, upon the payment of the Cure Amounts, the Purchaser shall be fully and irrevocably vested with all right, title and interest of the Debtors in and to the Assumed Contracts.

29.     The assignments of each of the Assumed Contracts are made in good faith under sections 363(b) and (m) of the Bankruptcy Code.

## ADDITIONAL PROVISIONS

30.     Except as expressly set forth in the Agreement and in this Sale Order, the Purchaser and its successors or assigns shall have no liability for any liability, claim (as that term is defined in section 101(5) of the Bankruptcy Code), interest or Encumbrance, interest or encumbrance, damages or other obligation of or against the Debtors related to the Assets by reason of the transfer of the Assets to the Purchaser.  The Purchaser shall not be deemed, as a result of any action taken in connection with the purchase of the Assets, to: (a) be a legal successor, or otherwise be deemed a successor to the Debtors; (b) have, *de facto* or otherwise, merged with or into the Debtors; (c) be a mere continuation or substantial continuation of the Debtors, or the enterprise of the Debtors; or (d) have any liability whatsoever, other than the Assumed Liabilities, under any theory of, without limitation, environmental, labor and employment, products or antitrust liability, whether known or unknown at the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

31.     Effective upon the Closing, all persons and entities are forever prohibited and enjoined from commencing or continuing any action or proceeding, at law or in equity, against the Purchaser, its affiliates, successors and assigns, or the Assets, with respect to any (a) Encumbrance other than the Permitted Exceptions, or (b) successor liability of the Purchaser for any of the Debtors.

{00101414}

AM 67256487.4

32.     Effective upon the Closing, no default shall exist under any of the Assumed Contracts and no non-debtor counterparty to any of the Assumed Contracts shall be permitted to declare a default by the Purchaser or otherwise take action against the Purchaser as a result of the Debtors' financial condition, bankruptcy, or failure to perform any duty or obligation under any of the Assumed Contracts.

33.     While the Debtors' bankruptcy cases, or any subsequent chapter 7 bankruptcy cases of the Debtors, are pending, this Court shall retain jurisdiction to, among other things, interpret, enforce and implement the terms and provisions of this Sale Order and the Agreement, all amendments thereto, any waivers and consents thereunder (and of each of the agreements executed in connection therewith in all respects) and to adjudicate disputes related to this Sale Order or the Agreement.

31.     Nothing in this Sale Order or the Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental statutes or regulations (or any associated liabilities for penalties, damages, cost recovery or injunctive relief) that any entity would be subject to as the owner or operator of the Assets after the date of entry of this Sale Order.  Notwithstanding the foregoing sentence, nothing in this Sale Order shall be interpreted to deem the Purchaser as the successor to the Debtors under any state law successor liability doctrine with respect to any liabilities under environmental statutes or regulations for penalties for days of violation prior to entry of this Sale Order or for liabilities relating to off-site disposal of waste by the Debtors prior to entry of this Sale Order.

32.     No bulk sales law, or similar law of any state or other jurisdiction shall apply in any way to the transactions contemplated by the Agreement, the Sale Motion and this Sale Order.

{00101414}

AM 67256487.4

33.     The transactions contemplated by the Agreement are undertaken by the Purchaser in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the Sale to the Purchaser, unless such authorization is duly stayed pending such appeal.

34.     The terms and provisions of the Agreement and this Sale Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates and their creditors, the Purchaser, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting claims in the Assets to be sold to the Purchaser pursuant to the Agreement, notwithstanding any subsequent appointment of any trustee, examiner or receiver under any chapter of the Bankruptcy Code or any other law, and all such provisions and terms shall likewise be binding on such trustee (whether under chapter 7 or chapter 11 of the Bankruptcy Code), examiner or receiver and shall not be subject to rejection or avoidance by the Debtors, their estates, their creditors, their shareholders or any trustee, examiner or receiver.

35.     The failure specifically to include any particular provisions of the Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Agreement be authorized and approved in its entirety.

36.     The Agreement, and any related agreements, documents or other instruments, may be modified, amended or supplemented by the parties thereto, in a writing signed by both parties, and in accordance with the terms thereof, without further order of the Court, provided that any such modification, amendment or supplement does not materially change the terms of the Agreement.

{00101414}

AM 67256487.4

37.     In the event that there is a direct conflict between the terms of this Sale Order and the Agreement, the terms of this Sale Order shall control.

38.     As provided by Rules 6004(h) and 6006(d) of the Federal Rules of Bankruptcy Procedure, this Sale Order shall not be stayed for 14 days after the entry of the Sale Order and shall be effective immediately upon entry, and the Debtors and the Purchaser are authorized to close the Sale immediately upon entry of this Sale Order.

Enter:

_____

Dated:                                                United States Bankruptcy Judge

**Prepared by:**
William J. Factor (6205675)
Sara E. Lorber (6229740)
**FACTORLAW**
105 West Madison Street, Suite 1500
Chicago, Illinois 60602
Telephone: 312-878-6146
Facsimile: 847-574-8233
Email: wfactor@wfactorlaw.com
         slorber@wfactorlaw.com
*Counsel for the Debtors*

{00101414}

AM 67256487.4

## EXHIBIT 1 TO SALE ORDER

## PURCHASE AND SALE AGREEMENT

**<u>EXHIBIT 2 TO SALE ORDER</u>**

**LIST OF ASSUMED CONTRACTS**